David BERGSTEIN, Plaintiff,

v.

JORDACHE ENTERPRISES,
INC., Defendant.

No. 90 Civ. 1461 (JMC).

United States District Court,
S.D. New York.

June 24, 1991.

Arthur M. Wisehart, Wisehart & Koch, New York City, for plaintiff.

Arnold I. Kalman, Blank, Rome, Comisky & McCavley, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

CANNELLA, District Judge:

Defendant's motion to dismiss plaintiff's complaint is granted in part and denied in part.   Fed.R.Civ.P.  12(b)(6).

## BACKGROUND

In April 1982, Jordache Enterprises, Inc., ["Jordache"] a New York corporation with its principal place of business in New York, engaged David Bergstein, a Pennsylvania domiciliary, to be its sales representative in Western Pennsylvania and West Virginia. Bergstein agreed to develop accounts among clothing retailers within his territory and in return Jordache promised to pay him a five percent commission on all goods shipped into his area. Jordache terminated its relationship with Bergstein in 1989. Bergstein thereafter commenced the instant action alleging the following claims: (1) wrongful discharge (count one); (2) prima facie tort (alternative count one); (3) breach of contract (count two); (4) intentional interference with contract (count three); and (5) violation of the Pennsylvania Commissioned Sales Representative Act, 43 Pa.Cons.Stat.Ann. §§ 1471 *et seq.* (Purdon 1991) [the "Sales Representative Act"] (count four). Jordache now moves to dismiss Bergstein's complaint in its entirety under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## DISCUSSION

In deciding a motion to dismiss for failure to state a claim upon which relief can be granted, the court must accept as true all of plaintiff's factual allegations and must construe the complaint in the light most favorable to the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). All permissible inferences from those facts must also be drawn in plaintiff's favor. *See Murray v. City of Milford,* 380 F.2d 468, 470 (2d Cir.1967). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that no relief can be granted under any set of facts plaintiff could prove in support of his claim. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Dahlberg v. Becker,* 748 F.2d 85, 88 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985).

## I. *Wrongful Discharge*

■ The jurisdictional basis for all of plaintiff's claims, including wrongful discharge, is diversity of citizenship; therefore, state law controls plaintiff's recovery. *See Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). To decide which state's law applies, the court must look to the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941).

New York applies the interest analysis approach to choice of law questions in tort actions. *See Schultz v. Boy Scouts of America, Inc.,* 65 N.Y.2d 189, 197, 480 N.E.2d 679, 684, 491 N.Y.S.2d 90, 95 (1985); *Babcock v. Jackson,* 12 N.Y.2d 473, 481, 191 N.E.2d 279, 283, 240 N.Y.S.2d 743, 749 (1963). Under this formulation, " 'controlling effect' must be given 'to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation.' " *Schultz,* 65 N.Y.2d at 196, 480 N.E.2d at 683, 491 N.Y.S.2d at 94 (quoting *Babcock,* 12 N.Y.2d at 481, 191 N.E.2d at 283, 240 N.Y.S.2d at 749). In making this determination, the most relevant contacts are the parties' domicile and the locus of the tort. *See id.* at 197, 480 N.E.2d at 684, 491 N.Y.S.2d at 95.

Here, plaintiff is a Pennsylvania domiciliary and defendant is a New York corporation with its principal place of business in New York. Under New York law, where defendant's negligent conduct occurs in one jurisdiction and plaintiff's injuries are suffered in another, the place of the wrong is deemed to be "the place where the last event necessary to make the actor liable occurred." *Id.* at 195, 480 N.E.2d at 683, 491 N.Y.S.2d at 94. Since plaintiff's injuries occurred in Pennsylvania, the locus of the tort is Pennsylvania. Given that Bergstein lived in Pennsylvania and that the tort occurred in that state, Pennsylvania has the greatest nexus with the controversy. *See Perdue v. J.C. Penney Co.,* 470 F.Supp. 1234, 1238 (S.D.N.Y.1979) (finding that Texas had the greatest interest in

wrongful discharge claim asserted by Texas domiciliary working in Texas against New York corporation).

Nevertheless, Pennsylvania law could be displaced. In *Neumeier v. Keuhner*, 31 N.Y.2d 121, 286 N.E.2d 454, 335 N.Y.S.2d 64 (1972), an action involving parties with different domiciles, the court observed as follows:

> Normally, the applicable rule of decision will be that of the state where the accident occurred but not if it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants.

*Id.* at 128, 286 N.E.2d at 458, 335 N.Y.S.2d at 70. Neither party contends that New York has a substantial interest in the underlying controversy which would justify displacing Pennsylvania law on wrongful discharge. Absent cause to deviate from the usual rule, the Court finds that Pennsylvania law governs plaintiff's wrongful discharge claim. In the context of Jordache's motion to dismiss, the issue before the Court is whether Pennsylvania recognizes a claim for wrongful discharge, and if so, whether the facts plaintiff alleges sufficiently state a claim.

█ The long standing rule in Pennsylvania is that absent an express statutory or contractual provision concerning the duration of the contract or the permissible grounds for dismissal, employee at-will principles apply. *See Pociask v. KDI Sylvan Pools, Inc.*, No. 89 Civ. 3447, slip op. at 8, 1990 WL 161256 (E.D.Pa. Oct. 17, 1990); *McGonagle v. Union Fidelity Corp.*, 383 Pa.Super. 223, 556 A.2d 878, 881 (Super.Ct.1989); *Darlington v. General Elec.*, 350 Pa.Super. 183, 504 A.2d 306, 309 (Super.Ct.1986). An at-will employee may be terminated "at any time, for any reason, or for no reason at all." *Martin v. Capital Cities Media, Inc.*, 354 Pa.Super. 199, 207, 511 A.2d 830, 834 (Super.Ct.1986). Thus, an at-will employee has no right of action against his employer for wrongful discharge. *See Geary v. United States Steel*

*Corp.*, 456 Pa. 171, 319 A.2d 174, 176 (1974); *McGonagle*, 556 A.2d at 881; *Richardson v. Charles Cole Memorial Hosp.*, 320 Pa.Super. 106, 466 A.2d 1084, 1085 (Super.Ct.1983). The rule is designed to safeguard the employer's right to manage his business as he sees fit and to uphold freedom of contract. *See Darlington*, 504 A.2d at 309.

There is one narrow exception to the rule. The leading case of *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974) established a nonstatutory cause of action for wrongful discharge from employment at-will where the employee discharge violates public policy and there is no legitimate or plausible reason for termination. *See* 319 A.2d at 180. To recover, the employee must show a "clearly mandated public policy" of the type that "strikes at the heart of a citizen's social rights, duties, and responsibilities." *Novosel v. Nationwide Ins. Co.*, 721 F.2d 894, 899 (3d Cir.1983) (applying Pennsylvania law). Pennsylvania courts, however, are reluctant to recognize a wrongful discharge claim based on an employee's allegation that his discharge violated public policy, *see Rossi v. Pennsylvania State Univ.*, 340 Pa.Super. 39, 489 A.2d 828, 837 (Super.Ct. 1985), and recognize the exception only in narrow circumstances, *see Hineline v. Stroudsburg Elec. Supply Co.*, 384 Pa.Super. 537, 559 A.2d 566, 568 (Super.Ct.1989).

█ A survey of Pennsylvania case law indicates that there are two factual situations which give rise to a claim that an employer's termination contravenes public policy. First, a wrongful discharge claim is recognized where the employee is terminated for fulfilling a statutory duty or exercising a constitutional right. *See Novosel*, 721 F.2d at 900 (discharge for exercising first amendment rights); *Perks v. Firestone Tire & Rubber Co.*, 611 F.2d 1363, 1366 (3d Cir.1979) (discharge for refusal to submit to polygraph examination which by statute an employer could not legally require an employee to take); *Field v. Philadelphia Elec. Co.*, 388 Pa.Super. 400, 565 A.2d 1170, 1180 (Super.Ct.1989) (discharge for performing statutory duty of notifying

Nuclear Regulatory Commission of public safety violations); *Reuther v. Fowler & Williams, Inc.*, 255 Pa.Super. 28, 386 A.2d 119, 121 (Super.Ct.1978) (discharge for fulfilling jury duty, a statutory obligation). Pennsylvania also affords relief where the employee is discharged for refusing to comply with his employer's order to violate the law. *See Woodson v. AMF Leisureland Centers, Inc.*, 842 F.2d 699, 702 (3d Cir.1988) (discharge for refusal to serve alcohol to clearly intoxicated patron); *Shaw v. Russell Trucking Lines, Inc.*, 542 F.Supp. 776, 779 (W.D.Pa.1982) (termination for refusal to commit motor vehicle violation); *McNulty v. Borden, Inc.*, 474 F.Supp. 1111, 1119 (E.D.Pa.1979) (termination for refusal to participate in antitrust violation).

█ An employee's termination does not threaten a clear mandate of public policy, however, where a nonmanagement employee is discharged merely for objecting to company policy, regardless of the commendable nature of his action. This is best illustrated by the Pennsylvania Supreme Court's decision in *Geary*, which introduced the public policy exception but found that the facts presented did not give rise to a wrongful discharge claim. In *Geary*, a former salesman alleged that he had been wrongfully discharged for complaining to management about the marketing of a product he believed was defective. The court distinguished Geary's discharge from employee discharges for refusing to commit perjury or for filing a workmen's compensation claim. The public policy implicated in these situations was "clear and compelling." *Id.* at n. 16. However, the court concluded that any public policy considerations raised by Geary's complaint were outweighed by the employer's legitimate interest in maintaining normal business operations. *See id.; see also Callahan v. Scott Paper Co.*, 541 F.Supp. 550, 563 (E.D.Pa. 1982) (no claim existed where sales managers discharged for objecting to company's antitrust violations); *Hineline*, 559 A.2d at 569 (no claim existed where former employee discharged for dismantling employer's illegal video camera without authority or right).

█ Bergstein alleges that pursuant to the parties' "partly oral and partly written" contract, he "would not be terminated without good cause so long as his performance was satisfactory." Complaint, at ¶¶ 5, 15. Under Pennsylvania law, however, "terms such as *employment will continue so long as performance is satisfactory* are too ambiguous to overcome the [at-will] presumption." *Darlington*, 504 A.2d at 312 (emphasis in original). Moreover, an intent to offer an express duration of employment may not be inferred from the employer's statement that the term of employment is contingent on satisfactory performance. *See McWilliams v. AT & T Information Sys. Inc.*, 728 F.Supp. 1186, 1195 (W.D.Pa. 1990). Since Bergstein lacks a contract for a specific term he is presumed to be an employee at-will.

In count one of his complaint, Bergstein alleges that his discharge violates public policy. According to Bergstein, Jordache sold directly to customers in his territory at prices lower than those which Jordache permitted Bergstein to offer in violation of the antitrust laws. *See* Complaint, at ¶¶ 20, 25(b). As a result of Jordache's illegal price discrimination, Bergstein claims that his sales were less than what they otherwise would have been, thereby reducing the amount of his commissions. *See id.* at ¶ 25(a). When Bergstein complained to Jordache about its unlawful practices he was terminated to discourage other sales persons from exposing Jordache's illegal acts. *See id.* at ¶¶ 25(c), 27.

Bergstein's termination clearly differs from the two types of discharges which Pennsylvania recognizes contravene public policy. First, there is no allegation that Bergstein had a statutory duty to object to Jordache's pricing policy. In this respect, Bergstein's claim is similar to *Callahan*. In *Callahan*, former employees argued that they had been discharged for objecting to and attempting to stop unlawful price discounts and promotional allowances that their employer offered to certain customers but not to others in violation of the antitrust laws. *See Callahan*, 541 F.Supp. at

552. The district court found that these facts failed to state a cognizable wrongful discharge claim based upon the Pennsylvania Supreme Court's decision in *Geary:*

> In *Geary* the Supreme Court held that employee complaints on matters generally entrusted to management even where motivated by a sincere concern for human safety do not outweigh the employer's interest in preventing disruptions to its operations. Surely if this is so, the employer's interest must also be paramount where the employee objects to pricing decisions of his employer on the ground that they cause harm to competition.

*Id.* at 563. Thus, despite the worthiness of Bergstein's objections, Jordache's legitimate interest in running its business as it desires outweighs any public policy considerations arising from his termination.

Bergstein's attempts to distinguish *Callahan* are unavailing. First, he argues that the employees in *Callahan* were salaried employees and therefore not directly harmed by the employer's unlawful pricing practices. Bergstein misstates the facts of *Callahan,* as the employees in *Callahan* expressly alleged that "as a direct result of [the employer's] anticompetitive activity they have suffered reduced compensation [and] lost the opportunity to increase their sales...." *Id.* at 553.

Bergstein also contends that unlike *Callahan,* the prices Jordache charged retailers are not exclusively a management decision. In support, Bergstein points to his allegation that Jordache's pricing scheme breached Bergstein's contract, as well as the antitrust laws. *See* Complaint, at ¶ 55. However, even drawing all reasonable inferences in Bergstein's favor, the allegation does not suggest that Bergstein participated in determining price with Jordache management; rather, it is clear that Bergstein sold the goods at a price decided upon by Jordache management. In any event, while Bergstein may have had a contractual right to require Jordache to set prices evenly, Bergstein did not have a statutory duty to object to Jordache's pricing policies. Consequently, his discharge does not threaten a significant public policy, in contrast to the discharges involving employees' actions expressly protected by the Pennsylvania legislature.

Bergstein's discharge is also different from the second type of discharge Pennsylvania recognizes as violating a significant public policy. *McNulty* highlights the deficiencies in Bergstein's claim, as that case also involved an employee's claim that his employer engaged in pricing practices violative of antitrust laws. In *McNulty,* however, the court found that the employee could state a wrongful discharge claim because the employer ordered his employee to offer deals to a customer account in violation of the antitrust laws. *See McNulty,* 474 F.Supp. at 1114, 1119. Here, there is no indication that Jordache asked Bergstein to participate in Jordache's illegal conduct.

In sum, given that Bergstein was not under a legal duty to object to his employer's antitrust violations and was not ordered to participate in his employer's illegal conduct, his termination did not violate a clear mandate of public policy—the cornerstone of the public policy exception to employment at-will. Accordingly, plaintiff's wrongful discharge claim based on the public policy exception is dismissed with prejudice. Fed.R.Civ.P. 12(b)(6).

In count one Bergstein also asserts a claim for wrongful discharge based on his employer's specific intent to harm. *See* Complaint, at ¶ 29. Bergstein's reliance on *Geary* in support of his contention that Pennsylvania recognizes a wrongful discharge claim based on the employer's specific intent to harm is without merit. In *Geary,* the Pennsylvania Supreme Court merely noted that the specific intent theory was "on the frontier of the law of tort." *See Geary,* 319 A.2d at 177. The court's holding was limited to discharges in violation of public policy. *See id.* at 180; *see also McWilliams,* 728 F.Supp. at 1193 (finding that the *Geary* court did not adopt specific intent theory to the employee at-will exception).

Bergstein's reliance on *Tourville v. Inter–Ocean Ins. Co.,* 353 Pa.Super. 53, 508 A.2d 1263 (1986) is equally without merit.

Although the Pennsylvania Superior Court recognized the specific intent to harm theory, recent Pennsylvania Supreme Court cases strongly indicate that this ground does not support a cognizable wrongful discharge claim. First, in *Clay v. Advanced Computer Applications*, 522 Pa. 86, 559 A.2d 917 (1989), the Pennsylvania Supreme Court explained Pennsylvania's firmly entrenched employee at-will doctrine as follows:

> [As] a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship. *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). Exceptions to this rule have been recognized in only the most limited of circumstances, *where discharges of at-will employees would threaten clear mandates of public policy.*

559 A.2d at 918 (emphasis added); *see also Paul v. Lankenau Hosp.*, 524 Pa. 90, 569 A.2d 346, 348 (1990) (quoting *Clay* with approval).

Thus, while Pennsylvania's intermediate court in *Tourville* liberalized Pennsylvania's employee at-will doctrine to include the specific intent to harm exception, the Pennsylvania Supreme Court has rejected such an exception. The Pennsylvania Supreme Court's latest decisions are consistent with Pennsylvania's staunch adherence to the employee at-will rule and the limited availability of the public policy exception. In view of the most recent pronouncements of Pennsylvania's highest court, the Court finds that Pennsylvania does not recognize a wrongful discharge claim arising out of an employer's specific intent to harm. *See Asko v. Bartle*, 762 F.Supp. 1229, 1233 (E.D.Pa.1991); *Mann v. J.E. Baker Co.*, 733 F.Supp. 885, 890 (M.D.Pa.1990); *McWilliams*, 728 F.Supp. at 1194. Accordingly, Bergstein's claim for wrongful discharge based on his employer's specific intent to harm is dismissed with prejudice. Fed.R.Civ.P. 12(b)(6).

## II. *Prima Facie Tort*

■ In the event of dismissal of his wrongful discharge claim, Bergstein asserts a claim of prima facie tort under New York law. The Court previously determined that Pennsylvania law applies to all of plaintiff's tort causes of action, absent a policy reason to displace Pennsylvania law. Since Bergstein has not proffered any policy reasons which would justify displacing the law of Pennsylvania, Bergstein's assertion that New York law applies to his prima facie tort claim is without merit. Moreover, the New York Court of Appeals has expressly stated that a plaintiff may not use New York's law of prima facie tort to circumvent "the unavailability of a tort claim for wrongful discharge." *Murphy v. American Home Prods.*, 58 N.Y.2d 293, 304, 448 N.Ed.2d 86, 91, 461 N.Y.S.2d 232, 237 (1983). Accordingly, Jordache's motion to dismiss alternative count one is granted. Fed.R.Civ.P. 12(b)(6).

## III. *Breach of Contract*

In count two of his complaint, Bergstein asserts a breach of contract claim based upon an implied contract of employment and the parties' express contract. Since plaintiff's claim concerns defendant's performance of the contract and the contract was to be performed in Pennsylvania, the claim is governed by the law of Pennsylvania. *See Babcock*, 12 N.Y.2d at 479, 191 N.E.2d at 282, 240 N.Y.S.2d at 747.

■ First, Bergstein asserts that an implied contract of employment existed between the parties based on additional consideration that he provided to Jordache. In the absence of an express contract for a definite term, an employee may avoid the at-will presumption by establishing additional consideration passing from the employee to the employer. *See McWilliams*, 728 F.Supp. at 1195; *Darlington*, 504 A.2d at 314. Additional consideration is present when "an employee affords his employer a substantial benefit other than the services which the employee is hired to perform, or when the employee undergoes substantial hardship other than the services which he is hired to perform." *Veno v. Meredith*, 357 Pa.Super. 85, 515 A.2d 571, 580 (Super. Ct.1986) (quoting *Darlington*, 504 A.2d at 315).

The presence of additional consideration indicates an implied promise to discharge only for cause. *See Schleig v. Communications Satellite Corp.*, 698 F.Supp. 1241, 1247 (M.D.Pa.1988); *Darlington*, 504 A.2d at 514. An implied promise to discharge only for cause based upon additional consideration continues for a reasonable length of time. *See Darlington*, 504 A.2d at 314. Thus, during the duration of the implied contract, the employee cannot be terminated without just cause, but after a reasonable time, the employee may be terminated for any reason or no reason at all. *See id.* at 311, 314. A reasonable term of employment should "be commensurate with the hardship the employee has endured or the benefit he has bestowed." *Veno*, 515 A.2d at 580.

Only one of Bergstein's several allegations satisfies Pennsylvania's definition of additional consideration. His allegation that Jordache encouraged and required him to expend time and energy to "develop customers and accounts among retailers," Complaint, at ¶ 9, does not show that Bergstein was required to do anything beyond the expected duties of a sales agent. His allegation that he developed a loyal following of customers entitling him to commissions, *see id.* at ¶¶ 12–13, also does not indicate that Bergstein either incurred a substantial detriment or afforded Jordache a benefit above and beyond the normal services for which he was hired to perform. The allegation that he gave up other business opportunities in favor of taking a position with Jordache, *see id.* at ¶ 48, is simply a reasoned career decision. *See Darlington*, 504 A.2d at 315. Contrary to Bergstein's contention, none of these allegations permit the inference that he brought a following of customers to Jordache.

However, Bergstein's allegation that he invested $200,000 of his own money to foster his customer base is sufficient to withstand Jordache's motion to dismiss. *See* Complaint, at ¶ 49. In *Marder v. Conwed Corp.*, 75 F.R.D. 48 (E.D.Pa.1977), the district court considered whether plaintiffs had presented sufficient additional consideration to rebut the employee at-will presumption. In *Marder*, plaintiffs were de-fendant's sales representatives for defendant's product known as space dividers. Plaintiffs alleged that they furnished additional consideration to defendant in the form of their extra efforts to obtain the government as a client and that they could not be terminated until they recovered their investment through commissions on sales to the government. *See id.* at 53. The court found sufficient evidence to support the jury's finding that plaintiffs' sales to the government required unusual or extraordinary effort. *See id.* at 58–59. Thus, Bergstein's allegation that he invested $200,000 constitutes additional consideration if the investment was unusual and not the kind of effort that would normally be required of a sales agent.

▪ Jordache further argues that more than seven years of employment is per se unreasonable. Under Pennsylvania law, the duration of employment depends upon the hardship suffered by the employee or extraordinary benefit afforded the employer. *See Veno*, 515 A.2d at 580. Clearly, there is no basis for finding that seven years employment is per se unreasonable. *See Lubrecht v. Laurel Stripping Co.*, 387 Pa. 393, 127 A.2d 687 (1956) (finding breach of implied contract where employee discharged six years into his employment).

In sum, Bergstein's claim that his termination was in breach of an implied contract sufficiently states a claim for relief. Accordingly, insofar as count three is based on Bergstein's discharge, defendant's motion to dismiss is denied. Fed.R.Civ.P. 12(b)(6).

▪ Bergstein also asserts a breach of contract claim based upon Jordache's failure to pay commissions, reduction of accounts, merchandise and sales territory, and sale of merchandise at prices lower than what Bergstein was permitted to offer. Jordache does not point to any pleading deficiencies with regard to Bergstein's cause of action based on breach of an express contract. Defendant's bold contention that an at-will employee is unable to assert a breach of contract claim obviously lacks merit with respect to Bergstein's

claim that Jordache breached the parties' express contract prior to his termination. *See Booth v. McDonnell Douglas Truck Servs.*, 401 Pa.Super. 234, 585 A.2d 24, 28 (1991) (at-will employee may assert breach of contract claim based on the employer's failure to pay commissions pursuant to contract). Accordingly, Jordache's motion to dismiss Bergstein's breach of express contract claim is denied. Fed.R.Civ.P. 12(b)(6).

## IV. *Intentional Interference with Contract*

■ In count three of his complaint, Bergstein asserts a claim for intentional interference with contract. Bergstein alleges that Jordache interfered with his business relationship with his accounts by offering his customers lower prices to persuade them to place their orders directly with Jordache. Jordache, however, argues that Bergstein's claim should fail because (1) Pennsylvania does not recognize an intentional interference with contract claim where one party to the contract asserts the cause of action against the other and (2) alternatively, Jordache had the right to interfere with relationships formed between Bergstein and Jordache's customers.

It is clear that "Pennsylvania law does not permit a terminated employee to assert against his or her employer a claim for intentional interference with his employment relationship; it is not a claim which can be made by the parties to a 'contract' against each other." *Wells v. Thomas*, 569 F.Supp. 426, 435 (E.D.Pa.1983). Jordache, however, misstates Bergstein's claim. Bergstein alleges that Jordache intentionally interfered with Bergstein's relationship with his accounts, not the relationship between Jordache and Bergstein.

■ The tort of intentional interference with contract includes the tort of intentional interference with a prospective contract or business relation of third parties with a plaintiff. *See Glenn v. Point Park College*, 441 Pa. 474, 272 A.2d 895, 897 (1971); *Yaindl v. Intersoll–Rand Co.*, 281 Pa.Super. 560, 422 A.2d 611, 621 (Super.Ct.1985). Under Pennsylvania law, the following four elements are required to establish a cause of action for intentional interference with a prospective contractual relation:

(1) a prospective contractual relation,

(2) the purpose or intent to harm the plaintiff by preventing the relation from occurring,

(3) the absence of privilege or justification on the part of the defendant, and

(4) the occasioning of actual damage resulting from defendant's conduct.

*Glenn*, 272 A.2d at 898–99. Bergstein's complaint alleges each of these elements. First, he alleges that Jordache interfered with his prospective business relationship with retailers by inducing certain customers to deal directly with Jordache, rather than plaintiff. *See* Complaint, at ¶ 59(a). To adequately plead this element, plaintiff must show that there was a reasonable likelihood or possibility that plaintiff would enter into the contract or business relationship. *See Glenn*, 272 A.2d at 898. Since Bergstein alleges that Jordache interfered with his established accounts, there was a strong likelihood that Bergstein would have continued to obtain orders from these customers. Bergstein also alleges that Jordache acted with the purpose of harming Bergstein by intending to deprive him of commissions he would have earned on the sales. *See* Complaint, at ¶¶ 61–62. There is no privilege or justification for Jordache's action since its aim was to keep all profits from the sales for itself. *See id.* at ¶ 63. Finally, the damages flowing from Jordache's interference is clearly stated in that Bergstein lost his commissions and suffered other related injuries. *See id.* at ¶ 64.

■ Jordache's second contention is that plaintiff fails to state a cognizable intentional interference with contract claim because the retailers are Jordache's customers. This argument is made without any authority and is flatly contradicted by Pennsylvania case law. Contrary to defendant's assertion, a claim for intentional interference with contract may be stated where a broker for a seller alleges that the seller dealt directly with a buyer, to deprive the broker of his commission. *See, e.g.,*

*Sherman v. Prudential–Bache Secs., Inc.,* 732 F.Supp. 541, 549–50 (E.D.Pa.1989); *Glenn,* 272 A.2d at 898; *Jeannette Paper Co. v. Longview Fibre Co.,* 378 Pa.Super. 148, 548 A.2d 319, 326 (Super.Ct.), *cert. denied,* —— U.S. ——, 110 S.Ct. 78, 107 L.Ed.2d 44 (1989). There is plainly no basis for Jordache's contention that a broker cannot maintain an action for intentional interference with contract against his principal. Accordingly, Jordache's motion to dismiss Bergstein's intentional interference with contract claim is denied. Fed.R.Civ.P. 12(b)(6).

## V. *Pennsylvania Commissioned Sales Representatives Act*

Finally, in count six of his complaint, Bergstein asserts a claim under Pennsylvania's Sales Representative Act, which establishes a cause of action for sales representatives against principals who fail to comply with the statute's requirements. *See* 43 Pa.Cons.Stat.Ann. § 1475 (Purdon 1991).

■■■ In his complaint, Bergstein alleges that Jordache violated section 1472 of the Sales Representative Act, requiring principals to provide their sales representatives with a contract stating the commission rate and geographical territory or accounts. The Sales Representative Act expressly excludes employees from the definition of sales representatives. *See id.* § 1471(3). Jordache contends that it was not required to comply with the Sales Representatives Act because according to Bergstein's claims, Bergstein was an employee and, therefore, not a "sales representative" within the meaning of the Sales Representative Act.

As plaintiff points out, however, his complaint alleges that Jordache did "employ and/or contract" with plaintiff to act as its sales person. *See* Complaint, at ¶ 5. Rule 8(e)(2) of the Federal Rules of Civil Procedure permits a party to plead in the alternative and plaintiff may "make effective use of alternative or hypothetical pleading in presenting the factual background or legal theories supporting his claim for relief." 5 C. Wright & A. Miller, *Federal*

*Practice and Procedure* § 1282 (1969). Accordingly, defendant's motion to dismiss count four is denied. Fed.R.Civ.P. 12(b)(6).

## CONCLUSION

Defendant's motion to dismiss plaintiff's complaint is granted in part and denied in part. Fed.R.Civ.P. 12(b)(6). Count one and alternative count one are dismissed with prejudice. The motion is denied with respect to counts two, three and four.

Defendant shall serve its answer within ten (10) days of the filing of this Memorandum and Order.

SO ORDERED.