Patricia JACKSON, Individually and as Personal Representative of the Estate of Dexter S. Jackson, Deceased, and as Next Friend of Mary Jackson and Robert Jackson, Minors, Plaintiffs–Appellants,

v.

FREIGHTLINER CORPORATION, et al., Defendants,

Betts Industries, Inc., Third Party Defendant–Appellee.

No. 90–7092

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Aug. 7, 1991.

Rehearing Denied Sept. 4, 1991.

David R. Weiner, Linda Turley, Windle Turley, P.C., Dallas, Tex., for plaintiffs-appellants.

Ronald R. Wren, Stradley, Schmidt, Stephens & Wright, Dallas, Tex., for third party defendant-appellee.

Before SMITH, DUHÉ, and WIENER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

During trial, the plaintiffs settled with one of the defendants, Trailmaster Tanks, Inc. (Trailmaster). As part of this settlement, Trailmaster assigned to the plaintiffs all its rights of contribution and/or indemnity against the third-party defendant, Betts Industries, Inc. (Betts). The district court granted Betts's motion to dismiss on

the ground that the settling defendant had no rights that could be assigned to the plaintiffs. Finding no error, we affirm.

## I.

Dexter S. Jackson was killed when the truck he was driving struck a cow in the middle of a roadway and burst into flames. Plaintiffs, Jackson's surviving wrongful death beneficiaries, filed suit against Freightliner Corporation (Freightliner), the manufacturer of the truck, and Trailmaster, the manufacturer of the gasoline tank trailer, alleging products liability causes of action. They also sued Newell Tate, the owner of the cow, on a negligence theory. Trailmaster filed a third-party complaint against Betts, alleging that it was entitled to full indemnity and/or contribution against Betts in the event that the manhole cover manufactured by Betts and attached to Trailmaster's gasoline tanker trailer was determined to be defective and the cause of the accident.

Prior to trial, the plaintiffs settled their claims against Freightliner and Tate and proceeded to trial against Trailmaster. After the trial began, the two parties reached a settlement under which Trailmaster assigned to the plaintiffs all of its contribution and indemnity causes of action against Betts, whether contractual, statutory, or common law.

Betts moved to disallow any further prosecution of the plaintiffs' claims under Trailmaster's assignment of its contribution or indemnity causes of action. To support its motion, Betts maintained that, under Texas law, Trailmaster lost any rights of contribution or indemnity against Betts when it settled and that thus it had no rights that could be assigned to the plaintiffs. The district court granted Betts's motion and dismissed with prejudice all causes of action asserted by the plaintiffs against Betts. Final judgment was then entered.

## II.

The plaintiffs argue that the Texas cases holding that a settling defendant does not have any contribution rights against a non-settling defendant do not apply to the facts of this case and that consequently the issue should be certified to the Texas Supreme Court. Also, they assert that Trailmaster's right to indemnity against Betts was not affected by its settlement with the plaintiffs. They thus believe that these indemnity rights could be validly assigned to and asserted by them, either in the same or an independent action.[1] We disagree with both contentions.

■ The plaintiffs' contribution argument does not comport with Texas law. A settling tortfeasor has no right of contribution against non-settling tortfeasors " 'under either the common law or the comparative negligence statute....' " *Texas Distribs., Inc. v. Texas College*, 747 S.W.2d 371, 371 (Tex.1987) (per curiam) (citing *Beech Aircraft Corp. v. Jinkins*, 739 S.W.2d 19, 22 (Tex.1987)). Indeed, " 'a defendant can settle only his proportionate share of common liability and cannot preserve contribution rights,' " *id.*, "either by obtaining a complete release for all other parties allegedly responsible or by obtaining assignment of the plaintiff's entire claim." *Beech Aircraft*, 739 S.W.2d at 22. The court's rationale for this rule is that such settlements would not "result in any significant savings of time or resources," because "the settling defendant's unusual posture as surrogate plaintiff" would lead to additional litigation, jury confusion, and possible prejudice to the remaining tortfeasors. *Id.*

■ Although the aforementioned cases dealt with assignments from a plaintiff to a settling defendant, the court's rationale applies equally to attempts to preserve contribution rights by way of assignment from a settling defendant to a plaintiff. While Trailmaster's settlement with the plaintiffs resolves plaintiffs' remaining claim against their defendant-tortfeasors, it impermissi-

---

1. In the alternative, the plaintiffs aver that this second question also should be certified to the Texas Supreme Court.

bly seeks to preserve the settling defendant's contribution rights against a third-party joint tortfeasor, Betts. *See, e.g., International Proteins Corp. v. Ralston-Purina Co.,* 744 S.W.2d 932, 934 (Tex. 1988); *Beech Aircraft,* 739 S.W.2d at 22.

Since the plaintiffs failed directly to allege any wrongdoing on behalf of Betts, as manufacturer of the manhole covers, the settlement reached between the plaintiffs and Trailmaster for the defective gasoline tank presumably includes compensation for the faulty manhole cover. Thus, the assignment of Trailmaster's contribution claim to the plaintiffs would cause only unnecessary additional litigation, confuse the jury as to the role of these "surrogate plaintiffs," prejudice Betts, and possibly result in a prohibited double recovery of the same damages. *See K-Mart Corp. v. Martinez,* 761 S.W.2d 522, 524–25 (Tex. App.—Corpus Christi 1988, writ denied). As such, Trailmaster's assignment of its contribution claim is void under Texas law. *See Beech Aircraft,* 739 S.W.2d at 22.

The plaintiffs' argument regarding Trailmaster's assignment of its common law[2] indemnity claim fares no better. Plaintiffs base their claim upon *W.R. Grace Co. v. Scotch Corp.,* 753 S.W.2d 743, 747 (Tex. App.—Austin 1988, writ denied), which suggests that a party, such as Trailmaster, that seeks indemnity but has settled its claims with a common law plaintiff will not be barred on the basis of that fact from pursuing its claim for indemnity against a joint tortfeasor. In *W.R. Grace,* the court emphasized that the plaintiff would be entitled to indemnity from the defendant, but only if the plaintiff could establish that it was a retailer who was "merely a conduit for the defective product and . . . not independently culpable" for defendant's manufacture of a defective product. *Id.* While the plaintiff in *W.R. Grace* was able to demonstrate that such a relationship existed, Trailmaster is not in such a position.

In order for the instant plaintiffs, as Trailmaster's assignees, to establish a common law claim for indemnity against Betts, they must demonstrate that Trailmaster had a valid and assignable cause of action for indemnity against Betts and that such an assignment occurred. *Esco Elevators, Inc. v. Brown Rental Equip. Co.,* 670 S.W.2d 761, 764 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.). Although the indemnity claim was assigned by Trailmaster to the plaintiffs, it was not valid and, consequently, it should not have been assigned.

█ The main reason for the invalidity of the assignment is that Trailmaster lacked independent culpability according to *W.R. Grace.* Under Texas law, the circumstances in which common law indemnity is available is very narrow. In comparative negligence cases, common law indemnity survives only when there has been purely vicarious liability. *See B & B Auto Supply, Sand Pit, & Trucking Co. v. Central Freight Lines, Inc.,* 603 S.W.2d 814, 817 (Tex.1980). And in products liability litigation, common law indemnity survives only when a member of the product marketing chain is held purely vicariously liable under the doctrine of strict liability, without independent culpability, for the defective product of another. *Aviation Office of Am., Inc. v. Alexander & Alexander, Inc.,* 751 S.W.2d 179, 180 (Tex.1988).

█ Since the plaintiffs did not sue Betts directly, they can recover from the manufacturer only by establishing that Trailmaster is liable to them and that this liability was purely vicarious on Trailmaster's behalf or that Trailmaster was an innocent distributor of Betts's product. The plaintiffs requested issues against Trailmaster at trial on theories of negligence, marketing defect, and design defect, all of which could have proved Trailmaster's liability to them. They failed to demonstrate, however, how these theories, under any circumstances, would demonstrate that Trailmaster was purely vicariously liable. Indeed, under each of these theories the plaintiffs alleged various acts of independent culpability that would defeat any claim that Trailmaster was merely a conduit for Betts's allegedly faulty manhole cover.

---

**2.** Trailmaster did not assert any contractual ba-

sis for its indemnity claim against Betts.

Such independent culpability on the part of Trailmaster destroys Trailmaster's common law indemnity claim against Betts. Since Betts is not liable for all of the damages paid by Trailmaster to the plaintiffs according to the latter's definition of the term "indemnity," Trailmaster's remedy is limited under *Alexander,* 751 S.W.2d at 180 to a right of contribution against Betts. But since Trailmaster forfeited its contribution rights when it settled with the plaintiffs, the plaintiffs are left here with no valid claims against Betts that were purportedly assigned to them in the settlement.

The judgment is AFFIRMED.