**GOODYEAR TIRE & RUBBER CO., Plaintiff,**

v.

**McDONNELL DOUGLAS CORPORATION, Defendant.**

**No. CV 92–3120–WJR (JGx).**

United States District Court, C.D. California.

Dec. 29, 1992.

504

Don A. Proudfoot, Jr., Graham & James, Los Angeles, CA, for plaintiff.

Law Offices of Bryan Cave, Jeffrey W. Morof, Robert J. Marshall, Los Angeles, CA, for defendant.

## MEMORANDUM AND ORDER

REA, District Judge.

This action came on for hearing September 28, 1992, before the Court, the Honorable William J. Rea presiding, on Plaintiff Goodyear Tire and Rubber Company's Motion to Transfer Venue, or in the Alternative, for Summary Judgment. After full consideration of the authorities submitted by the parties and oral argument of counsel, the Court hereby denies Plaintiff's motion.

## I. BACKGROUND

This action was filed by Goodyear Tire and Rubber Company ("Goodyear"), seeking a declaratory judgment that McDonnell Douglas Corporation's ("MDC") settlement of claims arising out of a 1988 airplane accident in Dallas precludes a contribution action by MDC against Goodyear. MDC has filed a counterclaim for contribution.

On May 21, 1988, a MDC DC–10–30 aircraft operated by American Airlines was involved in an accident at Dallas International

Airport, Texas. During takeoff, a cockpit warning light indicated that there was possible misalignment of the slats on the leading edges of the wings. This caused the flight crew to abort the takeoff, which included applying maximum brake pressure. Almost immediately after applying brake pressure, the aircraft experienced brake failure, which resulted in injuries to certain passengers and crew members, and destroyed the plane. Goodyear was responsible for the brake/wheel assemblies for all series of the DC–10 aircraft produced by MDC.

On October 1, 1990, MDC without a prior judgment or lawsuit entered into a settlement agreement ("Settlement Agreement") with American Airlines, Inc. ("American"), and American's insurer, United States Aviation Underwriters, Inc., ("AAU"), [for and on behalf of United States Aircraft Insurance Group ("USAIG")]. Goodyear was not a party to the settlement. MDC has made payments totaling $10,718,069.39, which represents 50% of USAIG's net hull loss payout and 100% of the non-hull claims from the accident. Defendant MDC expects to pay USAIG an additional $200,000 to cover unsettled claims.

According to MDC, after it entered into the Settlement Agreement in November, 1990, MDC's insurers initiated discussions with Goodyear's insurers in an effort to obtain contribution from Goodyear with respect to the settlement figure. If this failed MDC suggested the claim be submitted through alternate dispute resolution procedures.[1] In March, 1991, MDC asked Goodyear to contribute one-half of the estimated $12 million that MDC paid in settlement. On October 31, 1991, Goodyear rejected MDC's request, and immediately filed the instant action.

Plaintiff initially filed this action in the U.S. District Court, Second Circuit. Goodyear subsequently moved for summary judgment, on the same grounds found in the instant motion. In response, MDC filed a cross-motion to transfer the action to the Central District of California. On May 11, 1992, the Honorable Joseph Sprizzo of the New York court denied Plaintiff's motion for summary judgment, and granted Defendant's motion to transfer the action to the Central District of California.

In the instant motion, Plaintiff moves to transfer the action to the Northern District of Texas. In the alternative, Plaintiff moves for summary judgment.

## II. DISCUSSION

### A. *Plaintiff's Motion to Transfer*

The instant action was filed in New York. Defendant subsequently moved to transfer the action to California. Defendant's motion was granted.[2] Plaintiff now moves the Court to transfer the action to the Northern District of Texas, based on the assertion that Texas is a more convenient forum than California.[3]

To support a motion for transfer the moving party must show: (1) that venue is proper in the transferor district; (2) that the transferee district is one where the action might have been brought; and (3) that the transfer will serve the convenience of the parties and witnesses and will promote the interest of justice. *Mercury Serv., Inc. v. Allied Bank of Texas*, 117 F.R.D. 147, 154–55 (C.D.Cal.1987), *aff'd without opinion*, 907 F.2d 154 (9th Cir.1990).

Venue is proper in the Central District of California because Defendant was subject to personal jurisdiction in the Central District at the time the action commenced. 28 U.S.C. § 1391(a)(3). Venue is also proper in the Northern District of Texas because the airplane crash occurred in Dallas, Texas. 28 U.S.C. § 1391(a)(2). Thus, the resolution of this motion turns on whether transfer will serve the interests of justice.

1. According to Goodyear, it was not apprised of the Settlement Agreement until March 29, 1991.

2. Judge Sprizzo granted Defendant's motion to transfer based on the finding that New York had very little, if any, contact with the action.

3. The fact that this action was transferred once does not preclude the Court from transferring it to another venue. *Hoffman v. Blaski*, 363 U.S. 335, 340 n. 9, 80 S.Ct. 1084, 1088 n. 9, 4 L.Ed.2d 1254 (1960).

■ To determine whether transfer will serve the interests of justice, the Ninth Circuit has applied the following criteria: (1) plaintiff's initial choice of forum; (2) the convenience of the witnesses—the ability to mandate attendance of unwilling witnesses and the cost of obtaining willing witnesses; (3) where the events took place, and the relative ease of access to sources of proof; (4) convenience of the parties; and (5) all other practical considerations that make the trial of a case easy, expeditious and inexpensive. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 842–43 (9th Cir. 1986).

### 1. *Plaintiff's Choice of Forum*

Plaintiff's initial choice of forum was New York. Texas is Plaintiff's second choice of venue. Plaintiff contends that Texas is a more convenient forum than California. It should have raised this argument in the New York court, and not after the case was transferred to California.

### 2. *Convenience of the Witnesses*

The majority of Goodyear's witnesses are located in Ohio. The testing and design of the brake system occurred at Aircraft Braking Systems Corporation ("ABSC"), Goodyear's successor, in Akron, Ohio. Although Goodyear asserts it has "key" witnesses located in Texas, it only identifies two.[4]

The pilot in command of the aircraft is a resident of Laguna Niguel, California. In addition, MDC intends to call seven engineers who worked on the design and certification of the brake system, all of whom reside in California. Thus, the number of witnesses and the importance of their respective testimony favors California.

### 3. *Where the Events at Issue Took Place*

The accident occurred in Dallas, Texas. This is the only contact with the state of Texas, and it has minor significance in the resolution of the instant action.

The National Transportation Safety Board ("NTSB") conducted an investigation to determine the probable cause of the accident. The investigation was conducted at the NTSB's headquarters in Washington, D.C. The certification and testing of the DC–10 brake system occurred at ABSC's headquarters in Akron, Ohio. Douglas Aircraft Company ("DAC"), MDC's unincorporated commercial aircraft manufacturing division, is located in Long Beach, California. All DC–10 aircraft were designed and produced at this location in Long Beach between 1968 and 1989. Although the accident occurred in Texas, the events which involve the brake failure occurred in California and Ohio. Thus, the balancing of crucial events supports California venue, where DC–10 aircraft were designed and produced.

### 4. *Convenience of the Parties*

Goodyear is an Ohio corporation. The policy decisions affecting Goodyear's design and manufacture of the aircraft brakes and tires were made in Ohio. Goodyear is licensed to do business in Texas, as well as every state in the United States. If the action is transferred to Texas, the only convenience to Goodyear is that it will be closer in proximity to Ohio.

MDC is a Maryland corporation, with its principal place of business in Missouri. MDC maintains an office in Texas. MDC's commercial DC–10 aircraft operation is located in Long Beach, California. California is clearly the most convenient forum for MDC.

### 5. *Other Relevant Factors*

The resulting delay if the action is transferred to Texas weighs against transfer. This action is based on an airplane crash that occurred in May, 1988. The case was originally filed on November 1, 1991. Transferring the case to Texas, some three years after the crash and a year after the case was filed would cause further unnecessary delay.

In addition, the Court notes that Judge Sprizzo was of the belief that Goodyear filed the instant action in New York based on an

---

4. Goodyear intends to call "two American Airline employees" who witnessed the accident. The Court questions the relevance of this offer.

attempt to have Texas substantive law control. During oral argument on Defendant's motion to transfer the instant action, Judge Sprizzo stated, on three separate occasions, he believed Plaintiff filed the action in New York in an attempt to obtain a favorable choice of law analysis under New York law.[5] The New York court's statements were based on the timing of Goodyear's filing of the action, as well as the clear lack of contact New York has with the instant action.

Upon independent review, the Court agrees that the facts indicate that Goodyear is engaging in forum shopping. Primarily, the timing of Plaintiff's filing its declaratory relief action indicates that Goodyear was forum shopping. Even assuming that MDC did not contact Goodyear until March 1991, it is undisputed that Goodyear requested six months to evaluate MDC's claim, and MDC agreed. On October 31, 1991, Goodyear sent a letter to MDC rejecting settlement efforts. The next day, November 1, 1991, Goodyear filed this action for declaratory relief. Goodyear commenced this action the first day after the expiration of the six month grace period Goodyear had requested to consider MDC's claims.

In addition, the action was filed in New York, a forum having little contact with the underlying dispute. It appears that the only contacts with New York are: that the Settlement Agreement was executed in New York; MDC sent payment to New York; and the insurance companies involved in the settlement are located in New York. These contacts are tenuous.

After the action was transferred to California, Plaintiff raised for the first time the contention that Texas is a more convenient forum.[6] The foregoing factors indicate that Goodyear is engaging in forum shopping, and this supports denial of Plaintiff's motion.

The Court hereby denies Plaintiff's motion to transfer.

### B. Plaintiff's Motion for Summary Judgment

In the event the Court rules unfavorably on Plaintiff's motion for transfer, Goodyear moves for summary judgment. The issue to be resolved on summary judgment is whether MDC is entitled to contribution and/or indemnification under the Settlement Agreement. MDC settled the underlying dispute prior to any judgment having been rendered against it. Pursuant to the Settlement Agreement MDC obtained a complete release from American Airlines for all other alleged parties responsible for the accident and also obtained an assignment of American's purported claims against Goodyear.

#### 1. Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment is proper if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Initially, it is the moving party's burden to establish that there are no material issues of fact and that the moving party is entitled to prevail on the motion as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). To survive a motion for summary judgment the non-moving party must "go beyond the pleadings and by [the party's] own affidavits or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*

#### 2. Plaintiff's Motion was Previously Denied by the New York Court

On May 11, 1992, Judge Sprizzo denied Plaintiff's virtually identical motion for summary judgment. Judge Sprizzo's order fails

---

5. Judge Sprizzo stated, "I get the impression the Court [sic] was brought to New York for one reason only: to get the benefit of what you think is New York's choice-of-law rule which would require the application of Texas law that would entitle you to a dismissal without ever going to trial." Transcript, p. 5. Plaintiff believes that pursuant to Texas substantive law it prevails on its claim as a matter of law. This argument is

the basis of Plaintiff's motion for summary judgment.

6. It is also noteworthy that Plaintiff fails to request the Court transfer the action to Ohio, a forum which is more convenient to Plaintiff, and has more contacts to the instant action than Texas.

to set forth the legal rationale in support of this ruling.[7]

■ MDC argues that according to the "law of the case rule" the Court should not upset Judge Sprizzo's summary judgment ruling. The "law of the case rule" generally precludes a court from reexamining an issue decided by "the same court, or a higher appellate court, in the same case." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 833 (9th Cir.1982). According to the Ninth Circuit,

> The law of the case rule does not bind a court as absolutely as *res judicata*, and should not be applied 'woodenly' when doing so would be inconsistent with 'considerations of substantial justice,' the discretion of a court to review earlier decisions should be exercised sparingly so as not to undermine the salutory policy of finality that underlies the rule.

*Id., citations omitted.*

■ The law of the case controls unless the first decision "is clearly erroneous and would result in manifest injustice, an intervening change in the law has occurred, or the evidence on remand is substantially different." *Eichman v. Fotomat Corp.*, 880 F.2d 149, 157 (9th Cir.1989), *citing Waggoner v. Dallaire*, 767 F.2d 589 (9th Cir.1985).

Goodyear has not presented the Court with any new factual or legal support for its motion. Nevertheless, the Court finds it necessary to examine the merits of Plaintiff's summary judgment motion to determine whether the denial of Plaintiff's motion was clearly erroneous.

### 3. *Choice of Law Analysis*

■ The Court must first determine which state's choice of law analysis is applicable. When a case is transferred pursuant to 28 U.S.C. § 1404(a), "[t]he transferee district court must apply the state law that would have been applied if there had been no change in venue." *S.A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co.*, 641 F.2d 746, 749 (9th Cir.1981), *citations omitted.* Pursuant to the following analysis, the Court, applying New York's choice of law rules, must determine what substantive law is applicable.

Goodyear argues the Court must apply the law of the place of the accident, referred to as the *lex loci delicti*. This assertion attempts to simplify a complex and changing area of New York law.

■ Traditionally, under New York choice of law analysis disputes in tort actions were resolved by applying the law of the place of the wrong. *See Babcock v. Jackson*, 12 N.Y.2d 473, 476, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963) (wherein the court discusses New York's historical choice of law approach). Nonetheless, the New York courts have departed from this doctrine. In *Babcock v. Jackson*, the court rejected what it deemed "the inflexible traditional rule" and instead moved towards an interest analysis. *Id.* In *Neumeier v. Kuehner*, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972), the New York court attempted to clarify this area of the law. The *Neumeier* court held, in cases such as the instant case where the plaintiff and defendant are domiciled in different states and the accident occurred in a separate jurisdiction,

> Normally the applicable rule of decision will be that of the state where the accident occurred but not if it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants.

---

7. The court's order, dated May 11, 1992, states, *inter alia*, "plaintiff's motion for summary judgment and dismissal of defendant's counterclaim be and hereby is denied,...." In spite of this language, Goodyear argues that its motion for summary judgment was "neither argued nor 'conclusively' decided." Comments made by Judge Sprizzo during oral argument are not instructive. Judge Sprizzo stated, "as a matter of law, having looked at the conflict of laws, I am not convinced that New York law would apply Texas [substantive] law. I am not sure that Texas would insulate you from a lawsuit anyway." Transcript, p. 11. Judge Sprizzo then heard oral argument on Defendant's motion to transfer.

According to the explicit language in Judge Sprizzo's May 11, 1992 order, the Court assumes the New York court ruled on the merits of Plaintiff's motion.

*Id.* 335 N.Y.S.2d at 70, 286 N.E.2d at 458, *quoting Tooker v. Lopez,* 24 N.Y.2d 569, 585, 301 N.Y.2d 519, 249 N.E.2d 394 (1969).

■ Subsequent case law has interpreted *Neumeier.* In *Schultz v. Boy Scouts of America, Inc.,* 65 N.Y.2d 189, 198, 491 N.Y.S.2d 90, 480 N.E.2d 679 (Ct.App.1985), the court held that after *Babcock* and *Neumeier* "[i]nterest analysis became the relevant analytical approach to choice of law in tort actions in New York." Thus, according to *Neumeier* and *Schultz* and subsequent cases, the Court may displace the *lex loci delicti* if the interests of the state in which the tort occurred are outweighed by the interests of a competing jurisdiction.

■ In spite of the application of an interest analysis by New York courts, Goodyear urges the Court to apply the law of the place of the accident, and cites *Barkanic, et al. v. General Admin. of Civil Aviation,* 923 F.2d 957 (2d Cir.1991), in support of this position. The facts of *Barkanic* are distinguishable from the instant action. *Barkanic* was a wrongful death action wherein the decedents resided in New Hampshire and the District of Columbia, the accident occurred in China, and the defendant was domiciled in China. According to the court, pursuant to New York's choice of law analysis, as applied in *Neumeier,* Chinese substantive law was applicable. *Id.* The application of Chinese substantive law was based on the rationale that defendant's "conduct occurred within its domicile [China], and the law of

that domicile serves to limit [defendant's] liability." *Id.* at 962. The fact that the crash occurred in China was not dispositive, the court based its decision on China's interests in applying its substantive law to protect its citizen.[8]

The facts of this case support the application of the interest analysis approach. Here the accident occurred in Texas, a state which has little contact with the instant action. American Airlines conducts numerous domestic and international flights, and the fact that the accident occurred in Texas is merely fortuitous.

An older New York case, *Cousins v. Instrument Flyers, Inc.,* 44 N.Y.2d 698, 405 N.Y.S.2d 441, 376 N.E.2d 914 (1978), noted the difficulties presented in an airplane crash situation. The court declined to apply the law of the place of the wrong stating, "it has been acknowledged that in airplane crash cases, the place of the wrong, if it can even be ascertained, is most often fortuitous." *Id.* at 699, 405 N.Y.S.2d 441, 376 N.E.2d 914, *citations omitted.*[9]

■ MDC argues that the Court should apply California substantive law under the interest analysis approach. Plaintiff responds that even applying the concept of interest analysis, Texas law should apply. This Court disagrees. Plaintiff's argument contends that California does not have a sufficient interest in the litigation to justify adopting its substantive law.[10] Again, this

---

**8.** *Barkanic* was decided under *Neumeier's* second rule, which applies where the injury site is also the domicile of one of the parties. The instant case involves a "split-domicile" situation. Goodyear is domiciled in Ohio, MDC is domiciled in Maryland and Missouri, and the accident occurred in Texas. Thus, the third rule of Neumeier applies.

A second case plaintiff cites to support its position *Bergstein v. Jordache Enterprises, Inc.,* 767 F.Supp. 535 (S.D.N.Y.1991), also falls under *Neumeier's* second rule. In *Bergstein* plaintiff resided in Pennsylvania and the accident occurred in Pennsylvania. Thus, similar to *Barkanic* this case is not instructive. Moreover, it is clear that the court applied an interest analysis in reaching its ultimate conclusion, stating,

New York applies the interest analysis approach to choice of law questions in tort actions. *citations omitted.* Under this formulation, " 'controlling effect' must be given 'to the

law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation.' " *citations omitted.*

*Id.* at 537. The court then went on to consider plaintiff's domicile, defendant's domicile, where defendant's negligent conduct occurred, and where plaintiff's injuries were suffered.

**9.** In *Cousins* the airplane crash occurred in Pennsylvania. The court applied New York substantive law based on the fact that New York was the law of the forum, "significant" events occurred in New York, and defendants failed to argue Pennsylvania law was applicable until the trial began. *Id.*

**10.** Plaintiff concedes that California has an "interest" in the litigation, however, it argues that "California does not have such an overwhelming

Court disagrees. The Court finds that based on *Neumeier* and subsequent case law, the Court should apply an interest analysis approach to the instant case, where the plaintiff and defendant are domiciled in different states and the tort occurred in a separate jurisdiction.

■ According to the court in *Istim, Inc. v. Chemical Bank,* 78 N.Y.2d 342, 344, 575 N.Y.S.2d 796, 581 N.E.2d 1042 (1991), in applying the interest analysis the court must,

first look to the purposes of the statutes in conflict and identifying the policies which the States seek to promote through application of their laws. Then, based upon the facts of the case which relate to the statutes' purpose, we determine which State has the greater interest in having its law applied.

*citing Schultz* 65 N.Y.2d at 197, 491 N.Y.S.2d 90, 480 N.E.2d 679.

■ California permits a concurrent tortfeasor to seek "equitable indemnity" from another concurrent tortfeasor after satisfying a judgment against it in an underlying action, or after entering into a good-faith settlement with the injured party. *Teachers Insurance Co. v. Smith,* 128 Cal.App.3d 862, 865, 180 Cal.Rptr. 701 (1982). It is clear that there need not be a judgment against a settling tortfeasor. *Id.* California law identifies two purposes for the above law: (1) equitable apportionment of liability among tortfeasors, and (2) encouragement of settlements. *Bolamperti v. Larco Mfg.,* 164 Cal.App.3d 249, 253, 210 Cal.Rptr. 155 (1985).

Application of California law to the underlying dispute would further the substantive purpose behind the law by requiring Good-

year to pay its equitable share if, in fact, it is determined to be liable to any extent.

California interests would also be furthered by the application of California law. California is the state where the business relationship between Goodyear and MDC was centered for approximately twenty years. The brake/wheel assembly subcontracts were all executed and performed in California, and each contained provisions stating that California law would govern. Thus, California has an interest in applying its law and policies to parties who contracted in California to perform services in California.

■ Texas law provides that a party seeking contribution must first have imposed upon it an adverse judgment adjudging it to be a tortfeasor. *Jackson v. Freightliner Corp.,* 938 F.2d 40, 41 (5th Cir.1991), *citations omitted.* According to Texas law, MDC would be precluded from seeking recovery from Goodyear because MDC settled prior to any adverse judgment having been entered against it. The rationale for this rule is that such settlements would not "result in any significant savings of time or resources because the settling defendant's unusual posture as surrogate plaintiff would lead to additional litigation, jury confusion, and possible prejudice to the remaining tortfeasors." *Id.*

Texas interests will not be furthered by the application of its law. Texas is not the forum state, thus with respect to the saving of judicial resources, it is not Texas' judicial resources which will be taxed, but the U.S. District Court, Central District, California. In addition, Texas has no real interest in the underlying action, with the exception that the accident occurred within its jurisdiction.[11]

interest in the litigation to justify adopting its substantive law...." Neither party argues that Ohio law should apply, thus the dispute is between the application of Texas or California substantive law.

11. It is also noteworthy that if the action was originally filed in Texas, the Texas court would have applied something similar to the interest analysis applied herein. *See Baird v. Bell Helicopter Textron,* 491 F.Supp. 1129 (N.D.Tex.1980). A brief analysis indicates that the Texas court would most likely decline to apply Texas law.

This is supported by the holding in *Baird,* which quoted the following portion of the *Rest.2d* of *Conflict of Laws,* § 145 comment e,

Situations do arise ... where the place of the injury will not play an important role in the selection of the state of the applicable law. This will be so, for example, when the place of the injury can be said to be fortuitous or when for other reasons it bears little relation to the occurrence and the parties with respect to the particular issue.

*Id.* at 1139.

The Court is troubled by the apparent attempt by Plaintiff to forum shop so as to escape liability under Texas law when California law is applicable.

Based on the foregoing, the Court finds that California law is applicable to the instant action. Plaintiff's motion for summary judgment is denied. Additionally, according to the "law of the case rule" Judge Sprizzo's ruling should not be upset unless it was "clearly erroneous." The Court finds that Judge Sprizzo's ruling was not clearly erroneous.

 On October 9, 1992, shortly after Plaintiff's motion for summary judgment came on for hearing, Goodyear moved for certification, pursuant to 28 U.S.C. § 1292(b), of the instant order, and to stay the proceedings pending resolution of the appeal. The Court finds that the hereinabove order involves "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation...." 28 U.S.C. § 1292(b). By reason thereof, the Court grants Goodyear's motion for certification. The Court hereby denies Goodyear's request to stay the proceedings pending outcome of the appeal.

### III. CONCLUSION

For all the foregoing reasons, the Court concludes that the matter should be tried in U.S. District Court, Central District of California. Plaintiff fails to set forth any persuasive rationale to support the transfer of the instant action to Texas.

The Court denies Plaintiff's motion for summary judgment. Judge Sprizzo previously denied Plaintiff's motion for summary judgment, and pursuant to the "law of the case rule" this ruling will not be reversed. The application of the "interest analysis" supports the conclusion that California law applies. Thus Plaintiff is not entitled to summary judgment.

Plaintiff's motion for certification is hereby granted. The Court hereby denies Good-

year's request to stay the proceedings pending outcome of the appeal.

IT IS SO ORDERED.