OPINION OF THE COURT
Hancock, Jr., J.
Both parties to this appeal claim a right to a settlement fund from a terminated Illinois Federal court action in which neither party was a litigant. Petitioner Istim, Inc.’s claim is based on a default judgment, and respondent law firm Willkie Farr & Gallagher’s claim is based on a disputed statutory attorney’s charging lien. The issue before us is a choice-of-law question: whether the Illinois or New York attorney’s lien statute applies. If Illinois law applies, Willkie’s asserted lien did not attach because it failed to provide the notice apparently required by the Illinois statute. If the New York attorney’s lien statute applies, Willkie has a valid claim to the settlement fund. We hold that under the interests analysis approach to choice-of-law questions, the courts below errone *345 ously concluded that Illinois law applies in this proceeding. Accordingly, we modify and remit for a determination of which of the parties’ valid claims has priority to the settlement fund.
I
This is a special proceeding brought by Istim seeking turnover of the settlement fund as partial payment of an unpaid loan. Istim is a New York corporation acting in the United States as a purchasing and sales agent for Israeli manufacturers, and Willkie Farr & Gallagher is a New York law firm. In January 1983, Istim loaned $1,000,000 to Coronet Enterprises, a Utah mining company owned by two Israeli entrepreneurs, Yori Salant and Haggai Blich. Coronet failed to make the first loan repayment due in July 1983. Thereafter, Salant and/or Blich allegedly informed Istim that Coronet would repay the loan with the proceeds from a lawsuit. Coronet, represented by Willkie, commenced the lawsuit in July 1983 in Federal District Court in Illinois (Coronet Enters. v ETX Petroleum Corp. [the Illinois lawsuit]).
Meanwhile, the Israeli government was conducting an investigation of Salant and Blich which resulted in their indictment in January 1986 for stock fraud and manipulation; they both absconded. In June 1986, during the pendency of the Illinois lawsuit, Istim commenced an action against Coronet in Supreme Court, New York County, seeking damages arising from Coronet’s default on its loan agreement (Istim, Inc. v Coronet Enters. [the debt action]). Istim moved to attach the settlement fund it expected the Illinois lawsuit to yield. In August 1986, Coronet and ETX settled the Illinois lawsuit and created a settlement fund with Willkie acting as escrow agent. In October 1986, in the debt action on the loan, which Coronet never repaid, the New York court entered a default judgment for Istim against Coronet. The Illinois lawsuit settlement fund, in which both parties claim an interest, is presently held in a Treasury Bill by respondent Chemical Bank in New York.
In September 1988, Istim commenced this special proceeding pursuant to CPLR 5225 (b) and 5227 seeking an order directing Chemical Bank to turn over the settlement fund to Istim. Supreme Court, New York County, denied Willkie’s motion to disqualify Istim’s law firm. Thereafter, Willkie answered the petition and cross-moved for an order dismissing the petition, denying Istim’s application and awarding Willkie *346 summary judgment enforcing its statutory lien on the settlement fund pursuant to Judiciary Law § 475 or its retaining lien pursuant to New York common law. Supreme Court denied Willkie’s cross motion, granted Istim’s application and ordered Chemical Bank to turn over the fund to Istim. Supreme Court stated that the choice of applying either Judiciary Law § 475[1] or Illinois’ Attorneys Lien Act[2] was dispositive. The court applied the interests analysis approach for choice-of-law questions and determined that Illinois’ interests and contacts were more significant than New York’s. It, therefore, applied Illinois law and held that Willkie had waived its lien by failing to give notice as required by the Illinois statute. The Appellate Division, First Department, affirmed. This Court granted Willkie leave to appeal.
II
In deciding whether the New York or Illinois attorney’s lien statute applies, we first must determine what choice-of-law approach will be utilized in this type of proceeding.
Prior to Auten v Auten (308 NY 155) and Babcock v Jackson *347 (12 NY2d 473), New York courts generally applied a traditional, "territorially oriented” approach to choice-of-law issues which applied the law of the geographical place where one key event occurred, such as the place of the wrong in tort cases or where an agreement was entered into or performed in contract cases (see, Schultz v Boy Scouts, 65 NY2d 189, 196). In Auten, the Court abandoned such rules and adopted the more flexible "center of gravity” or "grouping of contacts” theory. An even more flexible approach often called "interests analysis” was utilized in Babcock, a tort case in which the Court stated that choice-of-law questions are governed by "the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation.” (Babcock v Jackson, supra, at 481.) These less rigid approaches were also applied in property cases (see, Matter of Clark, 21 NY2d 478; Matter of Crichton, 20 NY2d 124), although the traditional situs rule — that the location of the property was controlling — continued to hold some sway (see, James v Powell, 19 NY2d 249, 256 [conveyance of real property governed by the law of the place where the property was located, but Babcock’s interests analysis also employed in determining a punitive damages issue]).
Under the "interests analysis” approach, the " 'law of the jurisdiction having the greatest interest in the litigation will be applied and * * * the [only] facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict’ ” (Schultz v Boy Scouts, 65 NY2d 189, 197, supra [quoting Miller v Miller, 22 NY2d 12, 15-16]). Because interests analysis is an analytical approach of general application and has been employed by this Court in recent years in a number of areas of law, we see no reason not to apply this approach to the present turnover proceeding concerning competing claims to a settlement fund.
In determining whether Illinois or New York law governs Willkie’s attorney’s lien, it is important to identify the litigation in which this issue is being resolved. This is a turnover proceeding brought by Istim, a New York corporation, against Willkie, a New York law firm, in a New York court under New York law seeking a settlement fund located in New York based on a default judgment in a debt action which Istim also chose to bring in New York. The proceeding does not present the typical attorney’s lien dispute between an attorney and a *348 client or a party to the litigation upon which the lien is based where focusing upon the underlying litigation would be appropriate. The parties to the Illinois lawsuit, Coronet and ETX, have no interest in the present proceeding. The only connection between the Illinois lawsuit and this proceeding is essentially historical — that it was in the now-defunct Illinois lawsuit where the settlement fund originated and Willkie performed the work upon which it bases its lien. Thus, Supreme Court’s focus on the Illinois lawsuit to the virtual exclusion of the present proceeding, where the choice-of-law question must be resolved, was not appropriate.
Applying interests analysis, we first look to the purposes of the statutes in conflict and identify the policies which the States seek to promote through application of their laws. Then, based upon the facts of the case which relate to the statutes’ purpose, we determine which State has the greater interest in having its law applied (see, Schultz v Boy Scouts, supra, at 197). The purpose of the New York attorney’s lien statute is to ensure that attorneys have the means to enforce the right to their fees (see, Robinson v Rogers, 237 NY 467, 470-472). The basic purpose of the Illinois statute is the same (see, Baker v Baker, 258 Ill 418, 101 NE 587), but its provision for notice to the judgment debtor in the action in which the lien was obtained is intended to benefit the judgment debtor (see, Fischer v Slayton & Co., 25 Ill App 2d 250, 166 NE2d 617; Mid-City Trust & Sav. Bank v City of Chicago, 292 Ill App 471, 11 NE2d 617).
Looking to the circumstances here, we note that the judgment debtor in the Illinois lawsuit, ETX — not a party to the instant dispute — has nothing to do with Willkie’s enforcement of its attorney’s lien. Therefore, whatever interest Illinois might have had in requiring Willkie to give notice to ETX is not now applicable. Supreme Court’s analysis — that the "purpose of each statute can only be carried out if the court enforcing the lien can reach the judgment debtor” — misses the point. Willkie is not seeking to enforce its lien against ETX. ETX and Coronet created the settlement fund and the only issue the present proceeding must resolve is whether Istim or Willkie has priority to it. Because Illinois’ policy of requiring notice to judgment debtors is irrelevant, the only relevant policy interest is that of New York in having its attorneys fairly compensated.
New York has more than sufficient interest to justify appli *349 cation of its statutory policy. As previously noted, both parties, the settlement fund and the significant proceedings are all in New York. Even more importantly, New York’s undisputed interest in protecting its attorneys’ ability to be paid for legal services rendered is paramount and, in the circumstances of this case, there is no contrary interest in another State to suggest that New York’s policies should not control.
We also reject Istim’s contention that section 251 of the Restatement (Second) of Conflict of Laws requires the application of Illinois law. New York has not adopted that rule. Moreover, application of the New York attorney’s lien statute in this case comports generally with the interests analysis approach of section 6 of the Restatement (Second).[3]
Because we conclude that Willkie has a statutory attorney’s lien, we need not reach Willkie’s alternative claim to a common-law retaining lien. The parties’ arguments regarding whether Istim’s law firm should be disqualified are not reviewable since that portion of the Appellate Division order is nonfinal and does not necessarily affect the final portion of the order.
The question remains whether Istim’s default judgment or Willkie’s statutory lien has priority to the settlement fund. Inasmuch as this issue has not yet been addressed, the proceeding should be remitted to Supreme Court for its ultimate resolution.
Accordingly, the order, insofar as it affirms the order of Supreme Court entered December 8, 1989, should be modified, with costs to respondent Willkie Farr, by denying petitioner’s motion for a turnover order and remitting the matter to Supreme Court for further proceedings in accordance with this opinion, and, as so modified, affirmed. The appeal, insofar as it pertains to respondent’s motion to disqualify petitioner’s attorneys, should be dismissed.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Bellacosa concur.
Order, insofar as it affirms the order of Supreme Court entered December 8, 1989, modified, with costs to respondent Willkie Farr & Gallagher, by denying petitioner’s motion for a turnover order and remitting to Supreme Court, New York *350 County, for further proceedings in accordance with the opinion herein, and, as so modified, affirmed; appeal, insofar as taken from that portion of the Appellate Division order that affirmed the order of Supreme Court entered on April 20, 1989, which denied respondent’s motion to disqualify petitioner’s attorneys, dismissed upon the ground that that portion of the order does not finally determine the proceeding within the meaning of the Constitution.

. Judiciary Law § 475 provides:
"Attorney’s lien in action, special or other proceeding
"From the commencement of an action * * * in any court * * * the attorney who appears for a party has a lien upon his client’s cause of action [or] claim * * * which attaches to a verdict * * * in his client’s favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.”

. The Illinois Attorneys Lien Act (Ill Rev Stat, ch 13, ¶ 14) provides:
"Attorney’s lien for fees — Enforcement
"Attorneys at law shall have a lien upon all claims, demands and causes of action * * * upon which suit or action has been instituted * * * for a reasonable fee, for the services of such suits, claims, demands or causes of action, plus costs and expenses. To enforce such lien, such attorneys shall serve notice in writing, which service may be made by registered or certified mail, upon the party against whom their clients may have such suits, claims or causes of action, claiming such lien and stating therein the interest they have in such suits, claims, demands or causes of action. Such lien shall attach to any verdict, judgment or order entered and to any money or property which may be recovered, on account of such suits, claims, demands or causes of action, from and after the time of service of the notice.”

. For the reasons discussed above, the fact that the settlement fund originated in Illinois and that Willkie’s lien may theoretically have attached in Illinois is of no moment when analyzing New York’s and Illinois’ interests in the context of the present proceeding.