**PHOENIX GENERAL & HEALTH SERVICES, INC., Plaintiff,**

v.

**ADVANCED MEDICAL DIAGNOSTIC CORP., Fonar Corporation, Raymond V. Damadian, and Luciano Bonanni, Defendants.**

No. CV97–6099(ADS).

United States District Court, E.D. New York.

Aug. 31, 2001.

Irwin, Lewin, Cohn & Lewin, P.C., New York City (Edward Cohn, of counsel), for non-party judgment creditors Bernice Pollock and Rose Ann Abrams.

Steven A. Blum, Los Angeles, CA, for non-party Irene Kivitz.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This lawsuit arose out of claims by Phoenix General and Health Services, Inc. ("Phoenix" or the "plaintiff") that American Medical Diagnostic Corp. ("AMDC"), Fonar Corporation ("Fonar"), Raymond V. Damadian ("Damadian"), and Luciano Bonanni ("Bonanni") (collectively, the "defendants") fraudulently conveyed promissory notes, worth the approximate sum of $1.5 million, from AMDC to Fonar. In an order dated January 31, 2001, this Court approved the written settlement agreement of the parties, and the defendants deposited the sum of $1,225,000 into the Registry of this Court. Presently before the Court are applications for distribution of the settlement proceeds.

Rosenman & Colin LLP, New York City (Martin E. Karlinsky, of counsel), for the plaintiff.

Hanson, Bridgett, Marcus, Vlahos, Rudy, LLP, San Francisco, CA (David W. Baer, of counsel), for the plaintiff.

Pryor & Mandelup, LLP, Westbury, N.Y. (Randolph E. White, of counsel), for the defendant Advanced Medical Diagnostic Corp.

Shiff & Tisman, New York City (Laurence Shiff, of counsel), for the defendants Fonar Corporation, Raymond V. Damadian, and Luciano Bonanni.

## I. BACKGROUND

The following facts are taken from the complaint and motion papers presently before the Court, including the affirmation of David W. Baer, Esq., dated January 22, 2001, the affidavit of Bernice Pollock ("Ms.Pollock"), dated January 18, 2001, and orders of the Superior Court of the State of California for the City and County of San Francisco ("San Francisco Superior Court").

### A. The California Litigation

In 1985, Philip B. Kivitz, M.D. ("Dr.Kivitz") entered into agreements with AMDC and Fonar pursuant to which AMDC and Fonar granted Dr. Kivitz the right to oper-

ate a magnetic resonance imaging ("MRI") scanning center in San Francisco, California. Disputes arose between Dr. Kivitz and AMDC and Fonar, and on January 30, 1987, Dr. Kivitz, by his attorneys Hanson, Bridgett, Marcus, Vlahos & Rudy ("Hanson Bridgett"), commenced a lawsuit against AMDC and Fonar in the San Francisco Superior Court captioned *Philip B. Kivitz, M.D. and Rad–Sonic Diagnostic Medical Clinics, Inc. v. Advanced Medical Diagnostic Corp. and Fonar Corp.*, San Francisco Superior Court No. 870407 (the "California Litigation").

### 1. *Dr. Kivitz Engages Hanson Bridgett*

Dr. Kivitz and Hanson Bridgett entered into a retainer agreement, dated January 9, 1987. The law firm agreed to represent Dr. Kivitz in the California Litigation on a modified contingency fee basis, and Dr. Kivitz granted Hanson Bridgett a lien on any recovery.

### 2. *Dr. Kivitz Engages the Liccardo Firm in the California Litigation*

At an unspecified point in the California Litigation, Hanson Bridgett was disqualified from representing Dr. Kivitz. By a retainer agreement dated April 20, 1990, Dr. Kivitz engaged the law firm of Caputo, Liccardo, Rossi, Surges & McNeil (now Liccardo, Rossi, Surges & McNeil, the "Liccardo firm") in substitution of Hanson Bridgett. The Liccardo firm also was engaged on a contingent fee basis, and Dr. Kivitz also granted that firm a lien on any recovery. However, the Liccardo firm agreed that Hanson Bridgett would be compensated from the Liccardo firm's contingent fee.

The California Litigation was tried in January 1993, and the jury returned a verdict in favor of Dr. Kivitz in the amount of $880,000 against AMDC and in the amount of $120,000 against Fonar. However, the trial court granted the defendants' motion for judgment notwithstanding the verdict and entered judgment in the defendants' favor on August 27, 1993.

Subsequently, Dr. Kivitz filed an appeal. The Liccardo firm agreed to be associated with Hanson Bridgett in connection with the appeal and agreed to divide equally the contingent fee, which was 50% of the net recovery.

In an opinion dated February 27, 1995, the California Court of Appeal reversed in part the decision of the San Francisco Superior Court and directed that court to enter judgment in favor of Dr. Kivitz and only against AMDC in accordance with the jury's verdict. On August 16, 1995, the San Francisco Superior Court entered a judgment in favor of Dr. Kivitz and against AMDC. Pursuant to that judgment, Dr. Kivitz was awarded a total of $912,420.62, which consisted of: (a) the $880,000 jury verdict; (b) post verdict, pre-judgment interest in the amount of $20,493.15; and (c) trial costs in the amount of $11,927.47.

### 3. *Dr. Kivitz's Divorce Proceedings*

In the meantime, Dr. Kivitz and Irene Kivitz ("Mrs.Kivitz") were in the midst of divorce proceedings, also in the San Francisco Superior Court (*Kivitz v. Kivitz*, San Francisco Superior Court No. 922429). On January 5, 1993, that Court issued an order that was based on a stipulation between Dr. and Mrs. Kivitz. The order provided that if Dr. Kivitz were to succeed against AMDC and Fonar in the California Litigation, Craig Needham of the Liccardo firm was:

> required to take receipt of proceeds or consideration received in a settlement or other agreement or as the result of trial or arbitration and retain said proceeds or consideration in his trust account as trustee and not release, loan, or other-

wise transfer to Dr. Kivitz as an individual or as President of Rad–Sonic Diagnostic Medical Clinics, Inc. or to the business Rad–Sonic Medical Clinics, Inc. through any of its employees, agents or officers, any interest in said proceeds or consideration until further order of court.

2. Mr. Needham, and the [Liccardo firm] is [sic] entitled to receive the attorney fee and cost reimbursement for which they contracted with Dr. Kivitz (1/5/93 Order of the San Francisco Superior Court).

On February 5, 1998, the San Francisco Superior Court issued another Order After Hearing in the Kivitz divorce proceedings. That order pertained to the division of property and provided, in relevant part, "The net proceeds from the *Fonar* lawsuit in the approximate amount of $880,000, are to be divided equally between the parties and to be allocated ... one half to each party as of March 1, 1990 (the date of separation). 'Net' is defined as the money available after attorneys fees have been paid" (2/5/98 Order of the San Francisco Superior Court).

### 4. The Judgments of Ms. Pollock and Ms. Abrams

Ms. Pollock and Ms. Abrams, sisters of Dr. Kivitz, obtained a money judgment against him in San Francisco Superior Court on May 25, 1995 in the amount of $235,719.54 plus interest at a rate of 10% per annum (*Bernice K. Pollock and Rose Ann Abrams v. Philip B. Kivitz, Rad–Sonic Diagnostic Medical Clinics, Inc. and Irene Kivitz*, San Francisco Superior Court No. 940540). On June 8, 1995, the sisters filed a Notice of Lien in the San Francisco Superior Court against any recovery by Dr. Kivitz in the California Litigation.

On November 27, 1995, Ms. Pollock and Ms. Abrams obtained money judgments in the amounts of $180,901.84 and $41,997.00, respectively, against Mrs. Kivitz. On January 22, 1998, the sisters filed Notices of Lien in the San Francisco Superior Court against any recovery by Mrs. Kivitz in the California Litigation.

### 5. Dr. Kivitz Assigns His Rights to Phoenix

In April 1996, David W. Baer, Esq. ("Mr.Baer") of Hanson Bridgett received a copy of an agreement between Dr. Kivitz and Phoenix, dated January 20, 1995. Pursuant to the agreement, Dr. Kivitz sold all of his rights and interest in the proceeds of the California Litigation to Phoenix, of which Dr. Kivitz was president. Upon receipt of this agreement, Mr. Baer prepared a revised document of sale, effective January 20, 1995, which states that: (a) Dr. Kivitz transfers ownership of the recovery in the California Litigation to Phoenix; (b) Phoenix acknowledges that there are liens against Dr. Kivitz' recovery by G.E. Capital, Bernice Pollock, and Rose Ann Abrams, and that Irene S. Kivitz asserts an interest in the proceeds as Dr. Kivitz' former wife; and (c) Phoenix acknowledges that its ownership of any recovery was subject to these claims as well as the past, present, and future attorney's fees and costs, which will be paid from the proceeds of the California Litigation.

### B. Collection Efforts

### 1. The Liccardo Firm Engages Hanson Bridgett

In an agreement written by Mr. Baer on July 21, 1995, and signed by Craig Needham, Esq., ("Mr.Needham") of the Liccardo firm on July 27, 1995, and by Dr. Kivitz on August 3, 1995, the Liccardo firm engaged Hanson Bridgett to enforce the judgment obtained on behalf of Dr. Kivitz

("Collection Agreement"). The parties to the Collection Agreement acknowledged that Hanson Bridgett might be required to file separate enforcement suits in each state in which AMDC's assets were located and to engage local law firms to prosecute those lawsuits. They also agreed that Hanson Bridgett's fees would be based on the firm's standard hourly rates, but payment would be contingent upon recovery.

The Collection Agreement provided the following scheme for the distribution of any recovery in order of priority:

1) first, to the Liccardo firm for the collection expenses owed by the Liccardo firm consisting of Hanson, Bridgett's fees under this agreement;

2) second, to the Liccardo firm in favor [*sic*] of the expenses incurred in the trial, appellate and collection stages of the case, which shall be further distributed as follows:

   a) first, to the Liccardo firm or the Hanson, Bridgett firm, if necessary, to make equal the net amount of expenses incurred by the two firms at the three stages of the proceedings . . .; and

   b) second to the Liccardo and Hanson, Bridgett firms on a $^{50}/_{50}$ basis.

3) third, to the Liccardo firm in favor of Dr. Kivitz' obligation to pay attorney's fees and as Dr. Kivitz' net recovery, to be distributed proportionately on the following basis:

   a) 50% as Dr. Kivitz' net recovery, to be held in trust by the Liccardo firm pending distribution to Dr. Kivitz, Dr. Kivitz' former spouse and/or the judgment lien creditors, in accord with such subsequent agreements and/or court orders regarding these funds as are necessary to effect a distribution thereof;

   b) 50% as attorney's fees, to be distributed equally to the Liccardo and

Hanson Bridgett firms (Baer Affirmation, Exh. 6, p. 3).

Mr. Baer structured this fee arrangement based on the terms of the January 5, 1993 order of the San Francisco Superior Court, ordered Mr. Needham to place the proceeds of the California Litigation, if any, in his trust account but permitted Mr. Needham and the Liccardo firm to "receive the attorney fee and cost reimbursement for which they contracted with Dr. Kivitz."

### 2. Hanson Bridgett Obtains the Consent of the Judgment Creditors

As noted, at the time the Collection Agreement was executed, Bernice Pollock and Rose Ann Abrams had asserted liens on any recovery by Dr. Kivitz in the California Litigation. Apparently, GE Capital Corporation also had asserted a lien against the any judgment in Dr. Kivitz's favor. However, this Court is unaware of the details of that lien.

Under the California Code of Civil Procedure ("CCCP"), in cases in which a judgment creditor has obtained a lien, the plaintiff cannot enforce the judgment without the consent of the judgment creditor (Affirmation of David W. Baer, Esq. (hereinafter Baer Affirmation), ¶ 11 (quoting CCCP § 708.440(a))). Therefore, Hanson Bridgett obtained the written consent of GE Capital Corporation on September 20, 1995 and of Ms. Pollock and Ms. Abrams on September 24, 1995 to "any and all reasonable efforts taken on behalf of Philip Kivitz to enforce his judgment . . . provided that any net recovery due to Dr. Kivitz after payment of his attorneys' fees and collection expenses is held in trust pending distribution to Dr. Kivitz, Dr. Kivitz's former spouse and/or the judgment lien creditors . . . in accord with . . . such subsequent court orders regarding these funds

as are necessary to make a distribution thereof" (Baer Affirmation ¶ 12, Exhs. 8 an 10).

### 3. Hanson Bridgett Engages Camhy Karlinsky & Stein, LLP and Rosenman & Colin, LLP

Subsequently, Hanson Bridgett engaged counsel to domesticate and attempt to enforce the California judgment in Florida, Michigan, Pennsylvania, and New York. In New York, Hanson Bridgett retained the law firm of Camhy Karlinsky & Stein, LLP ("Camhy Karlinsky") and Rosenman & Colin LLP ("Rosenman"), when Martin E. Karlinsky ("Mr.Karlinsky") moved his practice to Rosenman upon Camhy Karlinsky's dissolution.

### C. The Present Lawsuit

In or about May 1997, Mr. Baer learned that AMDC and Fonar had allegedly entered into an agreement pursuant to which all of AMDC's contractual rights to payment under certain promissory notes had been assigned to Fonar, thereby rendering AMDC insolvent. Upon learning about this alleged transfer, Mr. Karlinsky, then of Camhy Karlinsky, filed the instant fraudulent conveyance action on October 23, 1997. AMDC and Fonar are corporations organized under the laws of New York state that have their principal place of business in New York state. Because Dr. Kivitz had assigned his rights to the proceeds to Phoenix, that corporation was the named plaintiff in this action. Phoenix was organized under the law of the state of Nevada and has its principal place of business in California.

On October 24, 2000, the parties settled the case pursuant to the stipulation of settlement filed with the Court. At the time the case settled, discovery was complete, and motions for summary judgment were pending.

### 1. The Order to Show Cause

In a letter dated December 5, 2000, Mrs. Kivitz, through her attorney Steven A. Blum, claimed that she was entitled to a share of the settlement fund because the San Francisco Superior Court had ordered that ·Dr. Kivitz owed her the sum of $228,297 in past spousal support and that a portion of the settlement fund was her separate property. In a letter dated December 22, 2000, Edward Cohn, Esq., informed the Court that he was counsel for Bernice Pollock and Rose Ann Abrams, both of whom were entitled to a portion of the settlement proceeds by virtue of the alleged fact that they were judgment creditors of Dr. Kivitz and Mrs. Kivitz.

Thereafter, on December 26, 2000, this Court ordered that anyone claiming to have an interest or potential interest in the proceeds of the settlement show cause on January 26, 2001:(a) why the Court should not accept the defendants' deposit of $1,225,000 in full and complete discharge of the claims in the action; (b) why the Court should not release the defendants from any and all liability by payment of the settlement amount; (c) why the Court should not release funds sufficient to pay the attorney's fees and costs related to the action; and (d) why the Court should not "so order" the stipulation of settlement. The Court further ordered that any person wishing to object to the stipulation of settlement must serve a written objections, if any, setting forth its position by January 19, 2001. In addition, the Court ordered that any person who fails to file and serve objections shall be deemed to have waived any objection to (a) the settlement of the action; (b) the release and discharge of the defendants from any and all liability based upon payment of the settlement amount; (c) the payment of attorney's fees and costs from the settlement amount; and (d)

the "so ordering" of the stipulation of settlement.

## 2. The Response of Mrs. Kivitz to the Order to Show Cause

Attached to Mrs. Kivitz's December 5, 2000 submission is a "Wage and Earnings Assessment Order for Spousal Support", which was issued from the San Francisco Superior Court on December 1, 2000; was signed by a judicial officer; and was endorsed by the Clerk of the Court. The order states that as of December 7, 1998, Dr. Kivitz owed Mrs. Kivitz the sum of $187,069 in spousal support arrearages. The January 27, 1999 "Findings and Order After Hearing," upon which the Wage and Earnings Assessment Order is based is also attached to Mrs. Kivitz's December 5, 2000 submission. The Findings and Order After Hearing, which is signed by a Judge Pro Tempore, states that as of December 7, 1998, Dr. Kivitz owes Mrs. Kivitz the sum of $187,069.37 in spousal support arrearages.

In papers received by this Court on January 25, 2001, Mrs. Kivitz replied to the order to show cause by submitting a certified copy of an "Order After Hearing," issued by the San Francisco Superior Court on January 16, 2001. Apparently, on January 9, 2001, Mrs. Kivitz applied to the San Francisco Superior Court in the matrimonial case for various orders concerning the distribution of the settlement fund in this case. Mrs. Kivitz applied for, and received, an order reducing the time in which her motion would be heard, so that it was heard five days later on January 16, 2001. Mrs. Kivitz served only Dr. Kivitz by overnight mail to a post office box in San Francisco. It appears that none of Dr. Kivitz's attorneys were served or notified about the application or hearing. Mrs. Kivitz does not dispute that she failed to inform the San Francisco Superi-

or Court in writing or at the hearing that this Court had issued an order to show cause on December 26, 2001.

Mrs. Kivitz appeared in the San Francisco Superior Court on January 16, 2001. Dr. Kivitz did not appear, as he had been out of the country since December 28, 2000 and was unaware of the proceeding. Citing Dr. Kivitz's absence, the Court signed Mrs. Kivitz's proposed orders. The signed orders provide, in relevant part, that (a) the settlement funds in this case are marital property, subject to the jurisdiction of the San Francisco Superior Court and to the prior orders of that Court; (b) one-half of the gross settlement proceeds is the separate property of Mrs. Kivitz as of March 1, 1990, and the other half is the separate property of Dr. Kivitz as of the same date; (c) Dr. Kivitz's share of the settlement proceeds is subject to all previous orders of the San Francisco Superior Court for spousal support, child support, and indemnification; (d) any decision regarding the distribution of the settlement proceeds "will require interpretation of prior orders of this Court"; (e) the "Order After Hearing," dated January 5, 1993 is modified to include all of Dr. Kivitz's attorneys including Mr. Needham, Mr. Baer, and Mr. Karlinsky, and to refer to the gross proceeds of the settlement proceeds; (f) Dr. Kivitz is ordered to direct his attorneys not to dissipate any of the settlement funds without prior approval of the San Francisco Superior Court; (g) Dr. Kivitz is ordered to deposit the gross amount of the settlement funds with the San Francisco Superior Court which will adjudicate the competing claims; (h) Dr. Kivitz is directed to produce all attorney's fees agreements from the California Litigation and the New York fraudulent conveyance case; (i) Dr. Kivitz is ordered to permit Mrs. Kivitz and her attorney to review and copy the files in both cases; (j) Dr. Kivitz is ordered not to authorize any attorney fees

or costs without Mrs. Kivitz's consent or the approval of the San Francisco Superior Court; (k) legal fees will be paid out of Dr. Kivitz's share of the settlement after payments of spousal and child support arrearages, the Pollock judgment against Mrs. Kivitz's separate property, and attorney and accountant fees and costs ordered by the San Francisco Superior Court; (*l*) pursuant to the order of the San Francisco Superior Court, dated February 6, 1998, Mrs. Kivitz is entitled to one-half of the gross settlement amount, free of any liens and claims against Dr. Kivitz, and her share of the attorney's fees and costs is not to exceed one-third of her one-half share of the settlement funds; (m) Ms. Pollock's lien against Mrs. Kivitz's property will be satisfied from Dr. Kivitz's one-half share of the settlement proceeds, after spousal and child support arrearages have been paid; (n) as of January 16, 2001, Dr. Kivitz owes the sum of $19,544.10 in child support arrearages; (*o*) Dr. Kivitz owes a total of $252,704.13 in spousal support arrearages, which amount is to be paid by the defendants in the Phoenix case; and (p) Dr. Kivitz owes Mrs. Kivitz a total of $600 in costs incurred by her to enforce the orders of the San Francisco Superior Court.

### 3. The Response of Ms. Pollock and Ms. Abrams to the Order to Show Cause

Ms. Pollock and Ms. Abrams claim that their judgment against Dr. Kivitz must be satisfied from the settlement fund because: (a) they are judgment creditors of Dr. Kivitz; (b) they have a valid contractual lien, dated June 8, 1995, on any recovery by Dr. Kivitz in the California Litigation; and (c) Dr. Kivitz's assignment of his right and interest in the California Litigation to Phoenix specifically states that Phoenix's ownership of any recovery was subject to the liens of Ms. Pollock and Ms. Abrams.

In further support of their assertion, the sisters explain that a San Francisco Superior Court order dated February 5, 1998 in the Kivitz divorce proceeding provided that the net proceeds from the California Litigation were to be divided equally between Dr. and Mrs. Kivitz.

The sisters also argue that if this Court finds that Mrs. Kivitz is entitled to any portion of the net settlement fund by virtue of the February 8, 1995 order in the divorce suit, then those proceeds should be payable to Ms. Pollock and Ms. Abrams on the following grounds: (a) Ms. Pollock and Ms. Abrams filed liens in California against the recovery by Mrs. Kivitz in the California Litigation; (b) they filed their California judgment against Mrs. Kivitz in Kings County Supreme Court on December 21, 2000; and (c) they filed the Transcript of Judgment with the Suffolk County Clerk's Office on January 9, 2001. Ms. Pollock and Ms. Abrams assert that as judgment creditors of Mrs. Kivitz, who have domesticated their judgment in the state of New York, they may enforce their judgment against any assets of Mrs. Kivitz, regardless of whether that asset is a spousal support award and regardless of the state in which it is located.

Lastly, the sisters explain that by an agreement with GE Capital Corp., any distribution from the settlement proceeds will be made on a 50–50 basis between GE Capital Corp. on the one hand and Ms. Abrams and Ms. Pollock on the other in partial satisfaction of each judgment creditor's claims.

### 4. The Response of Counsel for Phoenix and Dr. Kivitz to the Order to Show Cause

Counsel for Phoenix argues that attorney's fees and costs must be the first items paid from the settlement fund. According

to counsel, only after the fees and costs are paid to the various law firms that have been involved in this, and related, litigations, would Mrs. Kivitz be entitled to any of the settlement fund. In support of their assertions, Phoenix's attorneys argue that on January 8, 1993 the San Francisco Superior Court ordered that the Liccardo firm must hold the proceeds of the California Litigation in trust but is entitled to receive the fees for which they contracted with Dr. Kivitz. Counsel also refers the Court to the February 5, 1998 Order After Hearing of the San Francisco Superior Court which states that the net proceeds of Dr. Kivitz's lawsuit are to be divided equally between the parties and defines "net" as "the money available after attorneys fees have been paid." Counsel further points out that had the attorneys not taken the risk of pursuing the California Litigation and subsequent collection efforts, Mrs. Kivitz's marital interest would be worthless.

Counsel also disputes Mrs. Kivitz's assertion that her claim for delinquent spousal support payments has priority over the attorney's fees and costs that have produced this settlement. Counsel notes that all of the retention agreements, including the Collection Agreement which contemplates the retention of local counsel, clearly grant the attorneys liens on any recovery obtained. In addition, counsel asserts that Mrs. Kivitz's lien, if any, does not apply to a recovery by Phoenix, and if it does, it did not arise until December 1, 2000. Lastly, counsel argues that under California law, attorney's liens have priority over a subsequent judgment creditor and over a subsequent lien for support payments.

Counsel argues that distributions from the settlement fund should be made as follows in order of priority:

| | | |
|---|---|---|
| a) | To Camhy Karlinsky | $225,000.00 |
| b) | To the Liccardo firm | $ 85,665.45 |
| c) | To Hanson Bridgett | $255,247.99 |
| d) | To Rosenman for fees and expenses for Jan. 2001 | To be determined |
| e) | To Hanson Bridgett for fees and expenses for Jan. 2001 | To be determined |
| f) | To Hanson Bridgett and the Liccardo firm—contingency fee | 50% of the net recovery after payment of the fees listed above from the settlement fund |

Counsel for Phoenix submitted additional papers via facsimile on January 25, 2001, to address in writing the January 16, 2001 order of the San Francisco Superior Court, which had been submitted by Mrs. Kivitz. Counsel argues that the order is invalid because neither Dr. Kivitz nor Phoenix had notice or an opportunity to be heard. Counsel further asserts that the order interferes with this Court's jurisdiction.

### 5. The January 26, 2001 Conference

During the January 26, 2001 telephone conference, an issue arose as to whether the Court should even retain jurisdiction over the distribution of the settlement proceeds, or whether the Court should transfer the sum on deposit to the San Francisco Superior Court. The Court directed the parties to submit additional papers on this issue. Thereafter, the Court received papers from: (a) counsel for Phoenix who argues that this Court should retain jurisdiction and determine the method of distributing the proceeds of the settlement fund; (b) counsel for Ms. Pollock and Mrs. Abrams who make the same argument; and (c) counsel for Mrs. Kivitz who contends that this Court should transfer the settlement fund to the San Francisco Superior Court which should then determine how to distribute the proceeds.

## II. DISCUSSION

Although the history of this case is long and convoluted, the Court has before it only three issues: (a) whether this Court has jurisdiction to distribute the proceeds of the settlement fund; (b) whether to apply New York or California law in determining the priority of claims; and (c) the order in which the proceeds of the settlement fund will be distributed. This memorandum will address each of these issues in turn.

### A. Jurisdiction

■ Simply put, the Court sees no reason why it should relinquish jurisdiction over this case. It is a diversity jurisdiction fraudulent conveyance action brought by a Nevada Corporation against two New York corporations and two individuals domiciled in New York. It is important to note that despite the ancillary issues raised by Mrs. Kivitz, this suit is not to enforce a California judgment. Rather, this is a New York fraudulent conveyance action. Significantly, the parties to the action do not want the case to be transferred to the California state court.

Moreover, Mrs. Kivitz is the only person who contends that the settlement fund should be transferred to the San Francisco Superior Court for distribution. Mrs. Kivitz is not a party to this lawsuit, nor has she formally intervened or been joined in this action. As such, she lacks standing to transfer the settlement fund—in essence the venue of the case—to the San Francisco Superior Court. *See In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 116 (2d Cir.1992) ("[N]on-parties usually lack standing to challenge venue dispositions.") (citing *Trans World Airlines, Inc. v. Civil Aeronautics*, 339 F.2d 56, 63–64 (2d Cir. 1964)); *American Home Assur. Co. v. RJR Nabisco Holdings Corp.*, 70 F.Supp.2d 296, 300 (S.D.N.Y.1999). Furthermore, Mrs. Kivitz offers no authority in support of her argument that a non-party can transfer a lawsuit to a different jurisdiction. Accordingly, the Court denies Mrs. Kivitz's application to transfer the settlement fund to the California state court and finds that it has jurisdiction to determine how to distribute the proceeds of a lawsuit initiated in this Court.

### B. Choice of Law

■ A federal trial court sitting in diversity must apply the law of the forum state, here New York, to determine the choice-of-law. *See Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 497, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Under New York law, the Court looks to the state with the greatest interest in the particular issue of law or aspect of a case to determine which state's law to apply. *See Babcock v. Jackson*, 12 N.Y.2d 473, 481, 240 N.Y.S.2d 743, 749, 191 N.E.2d 279 (1963); *see also Padula v. Lilarn Properties Corp.*, 84 N.Y.2d 519, 521, 620 N.Y.S.2d 310, 311, 644 N.E.2d 1001 (1994); *In re Istim, Inc. v. Chemical Bank*, 78 N.Y.2d 342, 347, 575 N.Y.S.2d 796–798, 581 N.E.2d 1042 (1991).

In determining whether California or New York law governs the manner in which the settlement proceeds are distributed, it is important to identify the litigation in which this issue is being resolved. This is a fraudulent conveyance action brought by a Nevada corporation, which has its principal place of business in California, against two New York residents and two New York corporations in a New York federal court. The action is brought pursuant to New York law for damages that occurred because of an allegedly fraudulent conveyance in New York. The only party to the case who has a connection to California is the plaintiff, and it has

acknowledged that it has no right to the settlement fund. Thus the only connection between the California Litigation and this proceeding is historical—the money owed under the California judgment is the money that the defendants allegedly fraudulently conveyed. Notably, this is not an action brought to enforce the California judgment but, rather, an entirely separate fraudulent conveyance action. Moreover, New York has an interest in protecting its attorneys' right to be paid for legal services rendered. *See In re Istim*, 78 N.Y.2d at 346–49, 575 N.Y.S.2d at 1044–45, 581 N.E.2d 1042. For all of these reasons, the Court will apply New York law to determine the priority of the liens, claims, and interests against the settlement fund and the ultimate distribution of the proceeds.

### C. The Order of Distribution

*1. As Between Mrs. Kivitz and Counsel for Phoenix and Dr. Kivitz*

■ The Court finds that counsels' liens on the settlement fund have priority over all other liens, claims, and interests asserted against it. Because Ms. Pollock and Ms. Abrams do not dispute that the attorneys should be paid first, the issue of the sisters' liens will be put aside at this time.

As between Mrs. Kivitz and counsel for Phoenix and Dr. Kivitz, the Court notes that Mrs. Kivitz claims that she is entitled to: (1) at least one-half of the gross proceeds of the settlement fund, because the San Francisco Superior Court determined that her marital interest in the proceeds of the California Litigation applied to the gross proceeds; and (2) the sum of $228,297 for spousal arrearages to be deducted from Dr. Kivitz's portion of the settlement fund.

The Court is not persuaded that Mrs. Kivitz is entitled to one-half of the gross proceeds of the settlement fund. Based on

the orders of the San Francisco Superior Court, Mrs. Kivitz's marital interest in the proceeds of this litigation amounts to one-half of the sum Dr. Kivitz recovers. As per the retainer agreements between Dr. Kivitz and his numerous attorneys, Dr. Kivitz is entitled to the proceeds that remain after the payment of attorney's fees and costs. Put differently, Dr. Kivitz and his attorneys agreed that he would receive the net proceeds of the litigation. Because Mrs. Kivitz's marital interest in the proceeds of this litigation consists of one-half of Dr. Kivitz's share, Mrs. Kivitz is entitled to receive one-half of the net proceeds of the settlement fund.

That Mrs. Kivitz may receive a portion of the net as opposed to the gross proceeds of the settlement fund is further supported by the orders of the San Francisco Superior Court. The January 5, 1993 order states that although the Liccardo firm must hold the proceeds of the California Litigation in a trust account, the firm could withdraw its fees and costs from any judgment it obtained. This ruling demonstrates that the San Francisco Superior Court anticipated that the attorneys would be paid prior to any distribution to the Kivitzes. That this result was contemplated by the San Francisco Superior Court is supported by that Court's February 5, 1998 order, which specifically directs Dr. and Mrs. Kivitz to divide the proceeds equally "after attorneys fees have been paid."

The Court also rejects Mrs. Kivitz's claim that her share is to be determined by the gross proceeds on the grounds that (a) she did not agree to pay the attorneys' fees; and (b) the claimed fees are unreasonable. Contrary to Mrs. Kivitz's claim, whether she agreed to pay the attorneys' fees, costs, and disbursements is not relevant to the amount of her recovery. In-

deed, this Court would not expect Mrs. Kivitz to pay the attorneys fees, costs, and disbursements in this case, because she was not a party to the case and did not retain counsel to represent her. Contrary to Mrs. Kivitz's argument, she was never entitled to the gross proceeds, so the fact that she is receiving the net proceeds does not mean that she is paying her husbands' attorneys' fees. Rather, her right to the net proceeds derives from the orders of the San Francisco Superior Court and the retainer agreements between Dr. Kivitz and his attorneys. Accordingly, whether Mrs. Kivitz agreed to pay attorneys' fees and her opinion regarding their reasonableness is not relevant to this Court's distribution determinations.

■ Nor is the Court persuaded by Mrs. Kivitz's reliance on the January 16, 2001 order of the San Francisco Superior Court. The Court recognizes that it must give full faith and credit to judgments of other states. *See* U.S. Const. Art. IV, § 1. "A final judgment in one State if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land." *See Baker v. General Motors Corp.*, 522 U.S. 222, 231, 118 S.Ct. 657, 663, 139 L.Ed.2d 580 (1998). However, a judgment rendered in one state cannot reach beyond the controversy to control proceedings "brought in other States, by other parties, asserting claims the merits of which [the rendering state] has not considered." *Baker*, 522 U.S. at 238, 118 S.Ct. at 666. One state lacks the authority to dictate to a court in another jurisdiction how to try a case by "determin[ing] evidentiary issues in a lawsuit brought by parties who were not subject to the jurisdiction of [the court]." *Baker*, 522 U.S. at 239, 118 S.Ct. at 667.

The January 16, 2001 order of the San Francisco Superior Court has the effect of enjoining this Court from distributing the proceeds of the settlement fund. In particular, three portions of the order are troublesome to this Court: (a) directing Dr. Kivitz to deposit the gross amount of the settlement funds with the San Francisco Superior Court; (b) stating that the San Francisco Superior Court will adjudicate all of the competing claims to the settlement fund; and (c) ordering that the attorneys in this proceeding cannot receive their fees or costs without the approval of the San Francisco Superior Court.

The Court finds that these three provisions represent an attempt to control the proceedings in this case by precluding this Court from taking certain actions with respect to the settlement fund. *See Baker*, 522 U.S. at 238, 118 S.Ct. at 666 (holding that Michigan lacks the authority to control courts elsewhere by precluding them from determining what witnesses are competent to testify). By its order, the San Francisco Superior Court is attempting to resolve the issues in this case with regard to parties who are not subject to the jurisdiction of the San Francisco Superior Court. Simply put, California lacks the authority to reach beyond its boundaries to control the proceedings in this Court. *See Baker*, 522 U.S. at 238, 118 S.Ct. at 666. Accordingly, this Court declines to give full faith and credit to the January 16, 2001 order of the San Francisco Superior Court.

That this Court is not bound by the California order is further demonstrated by the fact that the order apparently was issued *ex parte. See Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 481, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) (holding that to qualify for full faith and credit, the state's proceedings must satisfy the minimum procedural requirements of the Due

Process Clause). Although Mrs. Kivitz may have served Dr. Kivitz with a copy of her application via overnight mail, Dr. Kivitz did not receive her application prior to the hearing. In fact, he had been traveling out of the country since December 28, 2000. Despite the fact that Dr. Kivitz had numerous attorneys representing him in a variety of actions, Mrs. Kivitz served none of them. Thus, Dr. Kivitz's attorneys, who are purportedly bound by the California order, had no notice of the proceedings and no opportunity to be heard prior to the issuance of an order that may have deprived them of fees of hundreds of thousands of dollars protected by liens. Further, the Court notes that a judicial commissioner reviewed the January 16, 2001 order, and recommended that certain of its provisions be vacated, which action suggests that the validity of the order is tenuous. In light of the fact that none of the parties bound by the January 16, 2001 order—except, of course, Mrs. Kivitz—had notice of the application that resulted in the order, this Court declines to give that order full faith and credit. *See generally Kremer*, 456 U.S. at 481, 102 S.Ct. 1883, 72 L.Ed.2d 262.

Equitable considerations also persuade the court that Mrs. Kivitz is entitled to a portion of the net proceeds of the settlement fund. The settlement fund was achieved only as a result of the herculean efforts of counsel. Counsel succeeded in obtaining the judgment in the California Litigation and then spent two years trying to satisfy that judgment in four different states. In this pursuit, they filed the present fraudulent conveyance action, which they extensively litigated for four years. Mrs. Kivitz was not named, nor did she participate, in any of these actions. As counsel points out, were it not for their efforts, Mrs. Kivitz would probably recover nothing. The attorneys' services were "indispensably instrumental" in producing the

settlement fund, and, in the totality of the circumstances, it would be inequitable to ignore their prior liens and deny them payment by awarding Mrs. Kivitz one-half of the gross proceeds. *See LMWT Realty Corp. v. Davis Agency, Inc.*, 85 N.Y.2d 462, 467–69, 626 N.Y.S.2d 39, 42–43, 649 N.E.2d 1183 (1995). Thus, after a review of the factual circumstances and the legal considerations, the Court finds that Mrs. Kivitz is entitled to one-half of the net settlement fund.

All of the attorneys who have represented Phoenix and Dr. Kivitz have submitted to the Court an agreed-upon plan for distributing their fees, costs, and disbursements. The Court notes that counsel have submitted time sheets, and some attorneys have agreed to reduce their fees in an effort to resolve this litigation in a timely fashion. Neither Dr. Kivitz nor Phoenix has presented any reason why their attorneys' fees, costs, and disbursements should not be paid in the manner agreed upon by counsel. Further, as noted above, Mrs. Kivitz lacks the standing to dispute the reasonableness of the fees. Accordingly, the Court approves the fees, costs, and disbursements as submitted by counsel, and that method of distribution is as follows:

| | | |
|---|---|---|
| a) | To Camhy Karlinsky | $225,000.00 |
| b) | To the Liccardo firm | $ 85,665.45 |
| c) | To Hanson Bridgett | $255,247.99 |
| d) | To Rosenman for fees and expenses for Jan. 2001 | To be determined |
| e) | To Hanson Bridgett for fees and expenses for Jan. 2001 | To be determined |
| f) | To Hanson Bridgett and the Liccardo firm—contingency fee | 50% of the net recovery after payment of the fees listed above from the settlement fund |

The Court notes that the exact figures are unknown because Rosenman and Hanson Bridgett have to submit the fees and expenses they have incurred since January 1, 2001, and the settlement fund has accrued interest. Thus, the Court directs Rosenman to submit a short proposed order on notice that precisely lists (1) the amount of money currently in the settlement fund; (2) the amount owing to Rosenman for fees and expenses; (3) the amount owing to Hanson Bridgett for fees and expenses; (4) the amount of the contingency fees owing to Hanson Bridgett and the Liccardo firm respectively; and (5) based on these sums and the following discussion, the sums owing to Phoenix, Mrs. Kivitz, Ms. Pollock, Ms. Abrams, and GE Capital Corp. Rosenman is further directed to submit the proposed order within 10 days of the date of this order and to serve it on all of the parties who received the Court's December 26, 2000 order to show cause.

The sum remaining after the attorneys' fees have been paid, including the 50% contingency fee, shall be divided equally between Phoenix and Mrs. Kivitz. As noted earlier, Mrs. Kivitz's one-half share of the net proceeds derives from the January 5, 1993 and February 5, 1998 orders of the San Francisco Superior Court, which state that her marital interest in the proceeds of the California Litigation is limited to one-half of the net proceeds.

### 2. As to Ms. Pollock and Ms. Abrams

#### (a) The lien against Dr. Kivitz's recovery

Mrs. Kivitz, Ms. Abrams, and Ms. Pollock all claim that they are entitled to recover any proceeds received by Phoenix. Ms. Kivitz argues that she should receive the sum of $228,297, based on the December 1, 2000 Wage and Earnings Assessment Order. Ms. Abrams and Ms. Pollock contend that they are entitled to receive the sum of $235,719.54 based on a contractual lien between Phoenix and them. The Court notes that the Phoenix's one-half of the net settlement fund will be less than the total amount claimed by Mrs. Kivitz, Ms. Abrams, and Ms. Pollock. Therefore, the Court must determine the priority of distribution as to Phoenix's share.

On May 25, 1995, Ms. Pollock and Ms. Abrams obtained a money judgment against Dr. Kivitz in the amount of $235,719.54, and on June 8, 1995, the sisters filed a Notice of Lien in the San Francisco Superior Court against any recovery by Dr. Kivitz in the California Litigation. When Phoenix purchased Dr. Kivitz's rights and interest in the California Litigation on January 20, 1995, Phoenix acknowledged that its ownership of any recovery was subject to, among other things, the liens of Ms. Abrams and Ms. Pollock. Ms. Pollock and Ms. Abrams did not file their judgment against Dr. Kivitz in New York. Accordingly, any lien that Ms. Abrams and Ms. Pollock have against Phoenix's recovery is contractual and consensual.

On January 27, 1999, Mrs. Kivitz obtained an order from the San Francisco Superior Court which provides that Dr. Kivitz owes her the sum of $187,069.37 in past spousal support. On December 1, 2000, Mrs. Kivitz obtained a Wage and Earnings Assignment Order for Spousal Support, which reflects the same sum of money as the January 27, 1999 order.

This Court finds that Mrs. Kivitz's orders amount to a judgment of the San Francisco Superior Court, and therefore, the orders have priority over the contractual lien between Ms. Pollock, Ms. Abrams and Phoenix. The Court recognizes that Mrs. Kivitz's orders were issued during

her matrimonial action, and thus pertain to Dr. Kivitz, as opposed to Phoenix. However, the Court finds that Dr. Kivitz cannot be permitted to avoid his spousal support obligations by assigning his right to recovery to Phoenix, the company of which he is the president.

Notably, the amount of spousal support arrearages to which Mrs. Kivitz currently claims she is entitled—$228,297—is more than the amount mentioned in the January 27, 1999 order and set forth in the December 1, 2000 Wage and Earnings Assessment Order—$187,069.37. The difference between the two sums probably reflects interest, but neither of the court orders indicates that Mrs. Kivitz was awarded or is entitled to interest. Therefore, the amount of her recovery is limited to the sum of $187,069.37, which is the amount set forth in the orders of the San Francisco Superior Court.

In sum, the Court finds that Mrs. Kivitz is entitled to receive the sum of $187,069.37, which shall be paid from Phoenix's one-half share of the net proceeds of the settlement fund. If Phoenix has any money remaining after the $187,069.37 has been deducted from its one-half share of the net proceeds of the settlement fund, those proceeds shall go to Ms. Abrams and Ms. Pollock in response to the contractual lien they have on Phoenix's recovery.

(b) *The lien against Mrs. Kivitz's recovery*

Finally, the Court finds that Ms. Pollock and Ms. Abrams are judgment creditors of Mrs. Kivitz who have properly recorded their valid liens against any recovery Mrs. Kivitz may have in this case. The sisters filed their California judgment against Mrs. Kivitz in Kings County Supreme Court on December 21, 2000, and on January 9, 2001, they filed the Transcript of Judgment with the Suffolk County Clerk's Office. The total amount owed to the two sisters is listed on the transcript of judgment as $222,898.84.

Because Ms. Pollock and Ms. Abrams have properly domesticated their California judgments against Mrs. Kivitz, the Court finds that the sisters are entitled to receive the sum of $222,898.84 from Mrs. Kivitz's share of the settlement fund. As explained above, Mrs. Kivitz is entitled to receive one-half of the net proceeds of the settlement fund plus the sum of $187,069.37, which represents the money this Court recognizes as being owed to her by Dr. Kivitz in past spousal support. From the total sum that Mrs. Kivitz will receive, Ms. Abrams and Ms. Pollock are entitled to deduct $222,898.84, which is the amount of their domesticated liens. The sisters have not asked this Court to divide the money between the two of them. Therefore, the sum will be distributed to them jointly.

### III. *CONCLUSION*

Having reviewed the submissions of the parties and having given them an opportunity for oral argument it is hereby

**ORDERED,** that within 10 days of the date of this Order, Rosenman is directed to submit a proposed order that is consistent with the findings contained in this Order and that sets for the following sums exactly and in detail:

(1) the current sum of money in the settlement fund including interest to date;

(2) the amount of money owing to Rosenman for fees and expenses;

(3) the amount of money owing to Hanson Bridgett for fees and expenses;

(4) the amount of the contingency fees owing to Hanson Bridgett and the Liccardo firm respectively;

(5) the net settlement fund;

(6) the one-half share of the net settlement fund payable to Phoenix;

(7) the one-half share of the net settlement fund payable to Mrs. Kivitz;

(8) the sum of $187,069.37 to be paid to Mrs. Kivitz from Phoenix's one-half share of the net settlement fund;

(9) the amount, if any, remaining in Phoenix's one-half share of the net settlement fund after the sum of $187,069.37 has been paid to Mrs. Kivitz;

(10) the amount, if any, to be paid to Ms. Abrams and Ms. Pollock from the remainder of Phoenix's one-half share of the net settlement fund;

(11) the total sum of Mrs. Kivitz's one-half share of the net settlement proceeds plus the $187,069.37 that she will receive from Phoenix's one-half share of the net settlement proceeds;

(12) the amount to be distributed to Ms. Abrams and Ms. Pollock from Mrs. Kivitz's total sum, which amount shall not exceed the sum of $222,898.84;

(13) the remainder, if any, that will be distributed to Mrs. Kivitz;

and it is further

**ORDERED,** that Rosenman is directed to serve a copy of its proposed order on all of the parties who received the Court's December 26, 2000 order to show cause.

**SO ORDERED.**